Raymond Dwight FURGISON, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–89–498–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 1, 1990.

Discretionary Review Refused March 13, 1991.

Tony Aninao, Houston, for appellant.

Lester Blizzard, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Raymond Dwight Furgison, appeals his judgment of conviction for the offense of robbery. TEX.PENAL CODE ANN. § 29.02 (Vernon 1989). The jury rejected appellant's not guilty plea and found him guilty as charged in the indictment. After finding the two enhancement paragraphs of the indictment to be true, the Court assessed punishment at fifty years in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Appellant raises four points of error. In his first point of error, appellant asserts that the trial judge committed reversible error in prohibiting appellant from questioning the complainant about her civil lawsuit against the grocery store who owned the parking lot where the robbery occurred. Appellant's second point of error alleges that the evidence was insufficient to support the robbery conviction as the complainant was unable to identify appellant as the person who robbed her. Appellant's third point of error contends that the evidence was insufficient to support conviction under the law of parties where the record failed to show where appellant aid-

ed, assisted, or encouraged the commission of the offense. Appellant's fourth and final point of error argues that the evidence was legally insufficient as the record does not show that the complainant was ever placed in fear of imminent bodily injury or death by being thrown to the ground as was plead in the indictment.

As three of appellant's four points of error deal with the sufficiency of the evidence, the facts of this case will be set out at some length. On December 3, 1987 around 8:00 p.m., the complainant, Ethylene Beard ("Beard") was shopping at a Safeway grocery store. When Beard returned to her car parked in the Safeway parking lot, she was robbed. As she was unlocking her car she felt a sharp yank on her purse. This caused her to be knocked down and dragged a short distance until she was separated from her purse. Beard testified that when she was first knocked down she was so terrified she was unable to scream. She then got up and saw a man standing in front of her with his fists doubled up. She then screamed for help. She testified that she was in fear for her life and so terrified that she lost control of her bladder. Beard then heard the voice of appellant who was standing behind her, stating "No don't do it to her." The individual facing her responded "Don't do it." This individual (who was never apprehended) then joined appellant and the two giggled, stating "We scared the pee out of her." Beard got a good look at appellant as the two moved away. Beard followed both of them in her car as did a number of witnesses who saw the incident or heard Beard's cry for help. Appellant was eventually apprehended in the bayou and detained at the Safeway store until the police arrived.

William Edward Meyer witnessed the robbery from a gas station located across the intersection from Airline and West Road. Meyer viewed appellant until appellant fled the scene. Meyer next saw appellant in police custody at the Safeway store. Meyer testified that the clothing worn by appellant was similar to that worn by the individual who had committed the robbery. Meyer further noted that appellant's tennis shoes were wet and had a small amount of dirt or mud on them, indicating that appellant had been running in the nearby bayou.

Jose Salazar, a checker at the Safeway store responded to Beard's cry for help by running in the direction that appellant was seen heading. Salazar found appellant in the bayou, squatting down with another individual. Salazar did not capture appellant, but later viewed him at the Safeway store and identified appellant in the court room. Joe Soliz, another Safeway employee, also responded to Beard's call for help. Beard directed Soliz to the bayou where Soliz encountered other individuals who were also pursuing appellant. Appellant was then captured in mid-flight by two individuals and placed in Soliz' car to be returned to the Safeway store. Beard positively identified appellant by his physical appearance and voice.

■ In his first point of error, appellant contends that the trial court erred in excluding his attempts to inquire into the civil lawsuit filed by the complainant against the Safeway store. Appellant contends that this lawsuit shows the bias of the complainant in that her chance of success in her civil action will be improved if appellant is convicted. During appellant's cross-examination of the complainant, the following transpired:

DEFENSE ATTORNEY: How much money are you making off the civil case that's been filed in this case?

PROSECUTOR: Objection, Your Honor.

DEFENSE ATTORNEY: Motive of the witness, Your Honor, *Coleman versus State.*

PROSECUTOR: It has nothing to do with the client, Your Honor. He's not the one involved in the civil case.

THE COURT: Sustained.

PROSECUTOR: May we approach the bench, if we might?

Whereupon the following discussion was held at the bench out of the hearing of the jury.

PROSECUTOR: Your Honor, we would object to bringing up the civil suit.

It's between her and the supermarket chain.

DEFENSE ATTORNEY: There's a— Your Honor, all I want to do is—I think wide latitude should be given to the Defendant in order to show any kind of bias or motive or leaning on any part of the witness to get a conviction in this case and all I want to do—I don't want to go into the particulars of it.

PROSECUTOR: Issue bias.

THE COURT: Objection sustained.

DEFENSE ATTORNEY: May I perfect a bill later on?

THE COURT: (Nods head.)

Whereupon the following proceedings were had in open court and in the hearing of the jury.

PROSECUTOR: Your Honor, we would like an instruction at this time for the jury to disregard the last statement.

THE COURT: Disregard the last question.

### BILL OF EXCEPTIONS

DEFENSE ATTORNEY: I believe, Your Honor, the record will reflect I had complainant Ethylene Beard on cross-examination and there was a line of questioning which was excluded by the Court. I would like to make a Bill of Exceptions relative to the questions which were sought to be asked by Defense Counsel on cross-examination of the complainant Ethylene Beard:

1. Now, Ms. Beard, isn't it true and correct that you have filed a civil lawsuit against the Safeway Store, Incorporated, as a result of this incident?

2. Now, Ms. Beard, isn't it true that you're the same Ethylene Beard who is the Plaintiff in Cause No. 88–59929, filed in the 269th Judicial District Court of Harris County, Texas, styled *Ethylene Beard versus Safeway Store, Incorporated?*

A couple other questions.

3. Isn't it true and correct that you are seeking monetary damages as a result of this incident, specifically medical ex-

penses; past pain; and loss of earning capacity, past and future?

4. And finally, Ms. Beard, isn't it true and correct that with the civil lawsuit pending, ma'am, you are very interested in getting a conviction in this particular case, ma'am?

Those were the particular brief questions that the Defendant sought to examine the complaining witness on during cross-examination, which said questions were excluded by the Court.

As another matter, Your Honor, the Defendant has advised me—that would conclude the Defendant's Bill of Exceptions at this time.

THE COURT: All right. The record so reflects.

It is apparent from the record that appellant wanted to question the witness about a lawsuit she brought against the corporate owners of the property, after she reported the offense to the police. It defies both reason and logic to argue that the trial court did not understand the purpose or the scope of the inquiry. It is a basic principle of constitutional law that a defendant has the right to cross-examine a witness in order to test the believability of the witness' testimony. *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). In a purely practical sense, testimony on cross-examination may expose a witness' ulterior motive for testifying or establish a bias on the witness' part against the accused. *Jackson v. State,* 482 S.W.2d 864 (Tex.Cr.App.1972).

The trial court prevented appellant from asking the witness questions that could have affected her credibility. In *Harris v. State,* 642 S.W.2d 471 (Tex.Cr.App.1982), the Court stated:

Apparent then, is the fact that when the cross-examiner is improperly denied the *opportunity to ask* a question *and receive* the witnesses' answer for consideration by the factfinder, he may concomitantly be denied the right to establish facts which would illustrate the true circumstances bearing on the issue by extrinsic proof. [Emphasis in original]

When a defendant's right to ask a question on cross-examination is frustrated "one of the safeguards 'essential to fair trial...,'" *id.*, at 476, is also frustrated. This occurred in the instant case. We find that the trial court improperly limited the scope of appellant's cross-examination of the complainant.

■ An unauthorized limitation of a defendant's right to cross-examine a witness, however, is subject to a harmless error analysis under Rule 81(b)(2), Tex.R. App.P.; *Coy v. Iowa*, supra; *Mallory v. State*, 752 S.W.2d 566 (Tex.Crim.App.1988). The procedure for applying the harmless error rule requires first, isolation of the error and all of its effects; and second, asking whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Harris v. State*, 790 S.W.2d 568 (Tex.Crim. App.1989). The instant case offers overwhelming direct and circumstantial evidence of guilt. In addition to the complainant's testimony, Meyer testified that he observed the offense and appellant's immediate flight to the bayou. Salazar identified appellant as the person hiding in the bayou behind the tall grass. Soliz testified as to appellant's capture as he ran from the bayou. We find that in light of the overwhelming evidence of guilt, the impact of error, by itself, for failure to admit evidence of a collateral civil action against Safeway Store Inc., is harmless and a rational trier of fact would not have reached a different result. We hold that error is harmless beyond a reasonable doubt and did not contribute to appellant's conviction or to his punishment. Appellant's first point of error is overruled.

■ We consolidate appellant's second and third assignments of error, both of which complain of insufficient evidence to support his conviction as a principal and also as a party. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, the test being could any rational trier of fact find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979). In addition, the standard of review for circumstantial and direct evidence is the same. *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App.1983). A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every reasonable hypothesis except that of the accused's guilt. *Beardsley v. State*, 738 S.W.2d 681 (Tex.Crim.App. 1987). Finally, under the law of parties, the evidence, direct or circumstantial, must show that appellant acted with intent to encourage, direct, aid or attempt to aid in the commission of the offense. *Garza v. State*, 573 S.W.2d 536, 537 (Tex.Crim.App. 1978). The mere presence of the accused at the scene of the crime is not enough to make him a party. *Beardsley v. State*, supra.

■ The jury was charged on the law of parties. After Beard was knocked to the ground, she got up to see two individuals: appellant and the second perpetrator. Initially, appellant was standing behind Beard. Appellant then conversed with the second perpetrator, stating "Don't do it to her." The second perpetrator complied with appellant's order not to hit Beard. Appellant then fled with his co-perpetrator into the bayou. This testimony is corroborated in its essential elements by the other eyewitnesses. Clearly, these facts fully support the reasonable hypothesis that appellant is guilty as a party. That appellant is guilty as a party is revealed by the following additional facts: appellant appeared ten to twelve feet from behind Beard while the co-perpetrator approached her from the front, apparently acting as the look-out. In response to Beard's loss of bladder control, appellant was heard to joke, "We scared the pee out of her." These facts are especially incriminating, demonstrating that appellant was part of a two-man operation. The fact that appellant jointly fled with the co-perpetrator confirms that appellant was more than a mere spectator and was actually a participant in the offense. We find that a rational trier of fact could find beyond a reasonable doubt that appellant was guilty of this robbery, as a party to the offense. Since the

jury was charged on the law of parties it made no difference if there was insufficient evidence to support appellant's conviction as a principal. Appellant's second and third points of error are overruled.

█ In his fourth point of error, appellant contends that the evidence is insufficient as there is no proof that the complainant was ever placed in fear of imminent bodily injury or death as a result of being thrown to the ground, as was plead in the indictment. It is undisputed that Beard was accosted at her car and thrown to the ground. Both Beard and Meyer testified to the complained of action. The very act of being grabbed from behind, thrown to the ground and having a purse pulled away has been held to be sufficient evidence to support the jury's implied finding that the complainant was put in fear of imminent bodily injury or death. *Crawford v. State*, 509 S.W.2d 582 (Tex.Crim.App.1974); see also, *Hicks v. State*, 482 S.W.2d 186 (Tex. Crim.App.1972); *Harding v. State*, 691 S.W.2d 815 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd).

Appellant's contention is totally defeated by the following facts clearly established in the record: Beard testified she was terrified when forced to the ground and her purse forcibly yanked from her grasp; that when first knocked down she was too terrified to speak; that she was so scared that she urinated. She further revealed that she was worried about getting hurt and ending up in a "cow pasture." This final comment is especially probative of Beard's mental state relative to her fear of serious bodily injury or death. The jury may have reasonably concluded that Beard's express fear that she would "end up in a cow pasture" meant that Beard did, in fact, suffer fear of imminent serious bodily injury or death. Appellant's fourth point of error is overruled.

Accordingly, the judgement of the trial court is affirmed.