Mark Allen HOWE, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–92–647–CR.

Court of Appeals of Texas,
Austin.

April 13, 1994.

Christopher M. Gunter, Austin, for appellant.

John Wied, Dist. Atty., Kevin M. Raymond, Asst. Dist. Atty., La Grange, for appellee.

Before KIDD, B.A. SMITH and ONION,* JJ.

ONION, Justice (Retired).

This appeal is taken from an order deferring adjudication of guilt. *See Dillehey v. State,* 815 S.W.2d 623 (Tex.Crim.App.1991). Appellant waived trial by jury and entered a plea of guilty to the offense of possession of a controlled substance, namely, lysergic acid diethylamide (LSD).[1] The trial court, after hearing evidence, deferred the adjudication of guilt and placed appellant on "probation" for five years subject to certain conditions. Appellant gave notice of appeal in a manner to ensure appellate review of the trial court's pretrial ruling on the motion to suppress evidence. *See* Tex.R.App.P. 40(b)(1).

Appellant advances two points of error. He contends in separate points that the trial court erred in denying his pretrial motion to suppress evidence "for the reason that the search of the automobile appellant was in was illegal" under (1) the Fourth Amendment to the United States Constitution and (2) article one, section nine of the Texas Constitution.

The search involved was a warrantless search. The State contends that it was a valid consensual search. Appellant contends that there was no consent to search, but if there was, the consent was not freely and voluntarily given and, moreover, was tainted by an illegal detention or stop.

The evidence concerning the search was developed at a hearing on the motion to suppress evidence. The evidence might have developed in a different manner had the parties followed the guidelines as to the burden of production and the burden of persuasion.

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1988).

1. We presume from the appellate record that the plea of guilty was to the first count of the indictment.

*See Russell v. State,* 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986). Once appellant had shown that the search was a warrantless one, the burden of proof should have shifted to the State to demonstrate a warrant, or to demonstrate the validity of the warrantless search by consent or otherwise. Instead, appellant assumed the burden of production and burden of proof. All witnesses (including the officer) were called and examined by appellant. The State, without objection, was content to cross-examine some of the witnesses despite the burden of persuasion cast upon it by law.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject any or all of a witness's testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim.App.1980). In reviewing the trial court's decision, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's fact findings. *Romero,* 800 S.W.2d at 543. If the trial court's fact findings are supported by the record, an appellate court is not at liberty to disturb the findings, absent an abuse of discretion. *Id.; see also Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991); *Dancy v. State,* 728 S.W.2d 772, 777 (Tex.Crim. App.), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). On appellate review, the court normally will address only the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Self v. State,* 709 S.W.2d 662 (Tex.Crim.App.1986); *Vargas v. State,* 852 S.W.2d 43, 44 (Tex.App.—El Paso 1993, no pet.).

The suppression hearing revealed that on May 4, 1992, during the daylight hours, Department of Public Safety Trooper Scott Bayless stopped a Nissan automobile on State Highway 71 in Fayette County. The vehicle bore an expired inspection sticker. Trooper Bayless observed no other traffic violations. The driver and owner of the car, Lionel Lanau, presented an expired driver's license to Trooper Bayless, who also determined that the sticker on the license plate was invalid. Appellant, a passenger in the Nissan, presented a valid driver's license as identification. A warrant check was run and it was determined by Bayless that Lanau had outstanding traffic warrants out of Bryan, Texas. There were no warrants for appellant's arrest.

Trooper Bayless instructed Lanau to drive his car and follow him to the Fayette County sheriff's office to confirm the existence of the outstanding warrants. Once at the sheriff's office, Lanau was taken inside. Appellant remained outside with his dog. The outstanding traffic warrants were confirmed. Lanau was taken before a justice of the peace to have bonds set. Trooper Bayless filed traffic offenses against Lanau. Lanau entered guilty pleas and was assessed $604.00 in fines and court costs. Lanau was unable to pay this amount. He was ordered confined. A jailer then took Lanau outside so that he could give his car keys to appellant and request that appellant go get the money to pay the fines and court costs.

Thereafter, Trooper Bayless went outside and told appellant to "wait a minute" and started asking questions. The officer admitted that appellant had done nothing wrong up to that point. He stated that appellant was outside the car, but later conceded appellant may have been in the driver's seat of the Lanau vehicle. Bayless acknowledged that his purpose in detaining appellant was to see if appellant would verify what Lanau had told him "out on the road" about their destination "what they were doing" and "that sort of thing." When asked what that had to do with violating traffic laws, Trooper Bayless replied:

A: There is [sic] other things beside traffic laws.

Q: Truth is you were interested in maybe catching him in a story, maybe getting into that car and looking for drugs, weren't you?

A: That is possible.

Q: That is what happened, isn't it?

A: That is what happened.

Trooper Bayless stated that in his interrogation of appellant he developed a single inconsistency in what appellant told him and what Lanau had earlier stated. Lanau had reported that he was employed and appellant stated that Lanau was unemployed. Bayless related that appellant became nervous as he continued to talk to him, and appellant's neck began to throb. Bayless then asked appellant about guns and narcotics in the car. Appellant denied their existence. Bayless acknowledged that he had no evidence, except for appellant's nervousness, of any contraband being in the car. He then asked appellant for consent to search the car and stated that appellant said "Okay." The written D.P.S. consent form was not used. Bayless did not request Lanau's consent.

Bayless's search of the car, aided by La Grange City Police Officer Charles David Gilbreath, revealed two small packets of cocaine and L.S.D. along with some paraphernalia. Gilbreath testified the search was under way when he arrived on the scene. He did not personally know if appellant had consented to the search.

Appellant testified that he waited outside the building after Lanau was taken inside; that Lanau later appeared, gave him the car keys, and asked him to go home and get money to pay Lanau's fines. As appellant was about to start the car, Trooper Bayless told him to wait because Bayless had to search the car for guns and narcotics. Appellant got out of the car and in response to Bayless's instructions, gave the car keys to the officer. Appellant stated that he did not give the officer consent or permission to search the car and that he was never asked. Trooper Bayless opened the hatchback and began to search the car while asking appellant questions. Officer Gilbreath then arrived and assisted in the search. Rain began to fall. Appellant was instructed to drive the car into a sally port. The search continued.

Lanau testified that after his fines were assessed, Trooper Bayless told him that he could get permission to turn his car keys over to appellant. A jailer took him outside to see appellant. Trooper Bayless remained inside. Lanau asked appellant to obtain money to pay his fines, and gave appellant the car keys. Lanau stated that Trooper Bayless never asked him for consent to search his car.

Not all encounters between police and citizens invoke the protection of the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *Mitchell v. State*, 831 S.W.2d 829, 832 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Police officers are allowed just as much freedom as anyone to ask questions of fellow citizens. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App. 1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim. App.1988); *White v. State*, 846 S.W.2d 427, 430 (Tex.App.—Houston [14th Dist.] 1992, no pet.). Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or other public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Royer*, 460 U.S. at 497, 103 S.Ct. at 1323. A seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. *Florida v. Bostick*, 501 U.S. 429, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). It is only when the police questioning of a citizen becomes a detention that it must be supported by reasonable suspicion. *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16; *Mitchell*, 831 S.W.2d at 832.

■ Under *Terry*, the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if they lack probable cause under the Fourth Amendment. Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or "hunch." That level of suspicion is considerably less than proof of wrongdoing by a preponderance of evidence, and is obviously less demanding than that for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

■ The concept of reasonable suspicion, like probable cause, is "not readily, or even usefully, reduced to a neat set of rules." *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585; *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). In evaluating the validity of a stop, the totality of the circumstances—the whole picture—must be considered. *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585; *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). The circumstances giving rise to a reasonable suspicion need not be criminal in themselves; rather they could include any fact that increases the likelihood of criminal activity. *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991). Mere suspicion is insufficient, however, to justify a *Terry* stop. The facts must support a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, the suspect is connected with the suspicious activity, and the suspicious activity is related to crime. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim.App.1987).

■ In the instant case, appellant had been a passenger in a car that had been stopped on the highway by the same officer in question. Appellant had been required to identify himself. He displayed a valid driver's license, but was detained by the officer while an outstanding arrest warrant check was made on him. Trooper Bayless acknowledged that when he approached appellant at the car near the sheriff's office, he knew that appellant had done nothing wrong, and he had no previous information about appellant, the car, or its owner, concerning drugs and guns. He had only a "hunch." The officer did not seek consent from Lanau, the car's owner, to search the car. He waited until the car keys had been given to appellant before approaching the previously detained appellant and telling him, "Wait a minute." It was the Officer's avowed purpose to interrogate appellant in an attempt to develop an inconsistency between Lanau's earlier statements and appellant's responses to his questions in order that the car might be searched. Once an inconsistency developed about Lanau's employment, Trooper Bayless asked for consent to search the car and received an "[o]kay" from appellant.

The trial court, as the trier of fact, could have accepted the officer's version of what occurred. There was nothing, however, to show that appellant was asked if he was willing to answer questions, and the officer admitted that he did not tell appellant that appellant had the right to leave. The record does not reflect that the twenty-four year old appellant, unversed in constitutional law, knew that he had the right to leave, particularly when confronted by the same officer who had detained him a short time before. There is nothing to show that appellant as a reasonable person felt free to disregard the officer and "go about his business." It is obvious from the testimony of the officer and appellant that the officer conveyed a message that compliance with his instructions was required. Moreover, under the totality of the circumstances, we find that a reasonable person in appellant's position would not have believed that he was free to ignore the officer's request to search the car the possession of which he had just assumed, or to terminate the encounter. *Mitchell*, 831 S.W.2d at 833; *see also Holladay v. State*, 805 S.W.2d 464, 472 (Tex.Crim.App.1991) (holding that the officer's request for permission to search the defendant's luggage converted the initial encounter into an investigative one, implicat-

ing Fourth Amendment protection). Here, the initial encounter easily slipped into an investigative detention. The evidence does not reflect a mere police-citizen encounter.

■ Was there, however, a valid basis for a brief *Terry* investigative stop or detention? As noted, a constitutionally valid investigative detention may be founded upon a reasonable suspicion that the person detained is connected with criminal activity. *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App. 1991). Specifically, the information that officers must have to justify a *Terry*-type stop or detention is "specific articulable facts, which, in the light of their experience and general knowledge, together with rational inferences from those facts, would reasonably warrant [the] intrusion." *Glass v. State*, 681 S.W.2d 599, 601 (Tex.Crim.App.1984). A detention based on a hunch or mere suspicion is insufficient for a *Terry* detention. *Hoag*, 728 S.W.2d at 380; *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). When the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Johnson*, 658 S.W.2d at 626.

The instant case is like *Comer v. State*, 754 S.W.2d 656 (Tex.Crim.App.1986), in which the seizure was held to violate the defendant's rights. There was no evidence that a crime was involved. *See also Viveros v. State*, 799 S.W.2d 458, 460 (Tex.App.—Corpus Christi 1990), *aff'd*, 828 S.W.2d 2 (Tex. Crim.App.1992). The officer did point to the fact that during questioning, appellant became nervous, and a vein stood out in appellant's neck. Nervousness when confronted by a police officer is as indicative of innocent activity as guilty activity. *See Holladay*, 805 S.W.2d at 467; *Glass*, 681 S.W.2d at 602. At a minimum, the suspicious conduct must differ sufficiently from that of innocent people under the same circumstances so as to clearly set the suspect apart from them. *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App. 1991). At best, Trooper Bayless possessed only an inarticulable hunch or speculative suspicion of wrongdoing. *Glass*, 681 S.W.2d

at 601; *Viveros*, 799 S.W.2d at 460. Under the circumstances presented, we hold that the detention here did not satisfy the test for an investigative detention or stop. The instant detention was just the sort of fishing expedition the Fourth Amendment and article one, section nine of the Texas Constitution were designed to prohibit. *See Armstrong v. State*, 550 S.W.2d 25, 31 (Tex.Crim. App.1977) (op. on rehearing).

■ Notwithstanding an illegal arrest or detention, consent to search, freely and voluntarily given, is still one of the recognized exceptions to the requirement of both a warrant and probable cause for a valid search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Juarez v. State*, 758 S.W.2d 772, 776 (Tex.Crim.App.1988); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App.1976). Custody or detention is merely one of the factors to be considered. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Crim.App.1985).

■ The burden of proof is upon the State to show by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Without such evidence the consent is not considered effective. *Johnson v. State*, 803 S.W.2d 272, 286 (Tex.Crim.App. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). The burden of proving that the consent was freely and voluntarily given cannot be discharged by showing no more than an acquiescence to a claim of lawful authority. *Bumper*, 391 U.S. at 548–49, 88 S.Ct. at 1791–92; *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Crim.App. 1987). The consent must be positive and unequivocal, and the police must not have employed duress or coercion, actual or implied, in obtaining permission to search. *Reyes*, 741 S.W.2d at 430; *Meeks*, 692 S.W.2d at 509. Consent must not be physically or psychologically coerced. *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex.Crim.App.1972). Whether a consent to a search was in fact voluntary is a question of fact to be deter-

mined from "the totality of the circumstances." *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2048; *Juarez,* 758 S.W.2d at 775; *Dickey v. State,* 716 S.W.2d 499, 504 (Tex. Crim.App.1986).

While an illegal arrest, detention, or stop does not automatically invalidate a consent to search, neither will a voluntary consent automatically validate a search which follows an illegal arrest, detention, or stop. *Juarez,* 758 S.W.2d at 779. If the consent to search is found to have been voluntarily given, that is only one step in the determination of the propriety of the search. The consent may have been obtained by the exploitation of an illegal arrest or detention. *Id.* at 778. The question then becomes whether the consent to search was obtained by the exploitation of an illegal arrest or detention or "by means sufficiently distinguishable to be purged of the primary taint." *Brown v. Illinois,* 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975) (quoting *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)).

In *Brown,* a confession case, the Supreme Court identified the following factors to be considered in determining whether a confession given following an illegal arrest is sufficiently attenuated to permit the use of the confession at trial. These factors are: (1) whether *Miranda*[2] warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. In *Juarez,* the Court of Criminal Appeals applied the *Brown* factors to a consent to search case.[3] 758 S.W.2d at 780; *see also Subia v. State,* 836 S.W.2d 711, 714–15 (Tex.App.—El Paso 1992, no pet.).

Applying these factors, we find that no *Miranda* warnings were given to appellant. In fact, there is no showing that

appellant was even informed that he had a right to refuse to consent to a search. While a warning that an individual does not have to consent to a search is not required or essential to the validity of a voluntary consent, the lack of any warning is probative on the issue of voluntariness. *Meeks,* 692 S.W.2d at 510. The lack of any warning here was clearly probative when appellant had just received the car keys and apparent "common authority" over the car just prior to the alleged consent.

The second factor is the temporal proximity of the detention and the consent to search. The exact time is not revealed by the record, but it appears that the consent followed "hard on the heels" of the illegal detention. The second factor is based on the reasoning that the shorter the time, the more likely the taint of the illegal arrest or stop has not been purged. *Juarez,* 758 S.W.2d at 781.

The third factor is the presence of intervening circumstances. We find none. The State made no showing as to the third factor.

The fourth factor is the purpose and flagrancy of the official misconduct. The court in *Brown* gave this factor particular emphasis. *Juarez,* 758 S.W.2d at 782. Without reiterating the evidence, it is clear from the officer's own testimony that his encounter with and detention of appellant had a "quality of purposefulness" and was an "expedition for evidence" admittedly undertaken "in the hope that something might turn up." *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262; *Juarez,* 758 S.W.2d at 783. All four factors fall on appellant's side of the ledger.

The evidence as to the oral consent came solely from Trooper Bayless. The evidence was meager and understandably so because it was developed by appellant's counsel on direct examination. The prosecutor asked no questions at all of Trooper Bayless. Given the circumstances, we find that the State, relying upon the evidence developed, did not

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** *See also Boyle v. State,* 820 S.W.2d 122, 132 n. 10 (Tex.Crim.App.1989) (opinion on original submission); *Brick v. State,* 738 S.W.2d 676, 680 (Tex.Crim.App.1987).

sustain its burden of proof of showing by clear and convincing evidence that the consent was freely and voluntarily given. If it can be argued otherwise, we conclude that the consent to search as a matter of law was obtained by the exploitation of an illegal detention, and was not shown by the State to have been obtained by means sufficiently distinguishable to be purged of the primary taint. The trial court erred in failing to suppress the evidence. Tex.Code Crim.Proc. Ann. art. 38.23 (West Supp.1994); *Viveros*, 799 S.W.2d at 460. Appellant's two points of error are sustained.

The order deferring adjudication of guilt is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.