

# NUMBERS 13-14-00061-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

DAVID ALVAREZ,                                                          Appellee.

### On appeal from the 28th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

The State, as appellant, appeals the trial court's order granting appellee David Alvarez's motion to suppress. Alvarez was charged by indictment with driving while intoxicated, third offense, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09 (West, Westlaw through Ch. 46 2015 R.S.). By a single issue, the State contends that the trial court erred by granting Alvarez's motion to suppress. We affirm.

# I.  BACKGROUND

Following his arrest and indictment for DWI, Alvarez filed a motion to suppress any tangible evidence derived from the traffic stop, including his arrest.

At the suppression hearing, Trooper Nathan Brandley testified that he observed a vehicle driven by Alvarez "go over the solid yellow line to its left, several times" and return to its lane.  After positioning his cruiser behind Alvarez's vehicle, Trooper Brandley noticed that "[Alvarez] was still having trouble maintaining a single lane."  According to Trooper Brandley, Alvarez "was going over the solid center stripe close to the dump or the landfill on [highway] 286" and "[crossed] over the white fog line and center stripe onto oncoming traffic" over the course of several minutes and over a distance of several miles.

Trooper Brandley explained that he did not conduct a traffic stop when he first observed Alvarez because he "wanted to see if maybe the person, you know, could have possibly been texting on the phone" and wanted "to see if there was any other probable cause along the way that would cause [Trooper Brandley] to want to stop [Alvarez's] vehicle."  Trooper Brandley stated that he ultimately stopped Alvarez's vehicle after he observed Alvarez "cross the center, dotted center stripe, centerline" and that all of the traffic violations that predicated the stop were recorded on his dashboard camera video. A video of the traffic stop and arrest was played at the hearing.

After arresting Alvarez, Trooper Brandley learned that he had two prior DWI convictions.  Based on Alvarez's criminal history, Trooper Brandley issued statutory

2

warnings to Alvarez for the purpose of obtaining a blood draw by reading both the DIC-24 and "DIC-51."[1]  Alvarez was sent to Spohn Shoreline Hospital for the blood draw.

After the hearing, the trial court ordered the following evidence suppressed:

1. any and all evidence seized by law enforcement officers or others in connection with the detention and arrest of DAVID ALVAREZ in this case or in connection with the investigation of this case, including but not limited to any and all evidence seized by the arresting officers in this case, and any testimony by the Texas Department of Public Safety or any other law enforcement officers or others concerning such evidence;

2. the arrest of DAVID ALVAREZ at the time and place in question and any and all evidence which relates to the arrest, and any testimony by the Texas Department of Public Safety or any other law enforcement officers or others concerning any action of DAVID ALVAREZ while in detention or under arrest in connection with this case;

3. all written and oral statements made by DAVID ALVAREZ to any law enforcement officers or others in connection with this case, and any testimony by the Texas Department of Public Safety or any other law enforcement officers or others concerning any such statements; and

4. any and all evidence obtained by the arresting officers or Texas Department of Public Safety.

The trial court thereafter issued the following findings of fact:

1. On April 13, 2013, Texas Department of Public Safety Trooper Nathan Brandley entered Crosstown Expressway, south bound at Leopard Street;

2. Brandley became suspicious of Defendant's vehicle and repositioned his onboard camera to face forward;

3. Brandley videotaped Defendant's vehicle as it travelled south bound on Crosstown Expressway, passed over the S.P.I.D. (Highway 358) overpass, continued south to the area of the city dump, stopped at a stop sign,

---

[1] Erroneously referred to as DIC-51, form THP–51 is used to document a mandatory blood draw and allows an officer to specify that he is acting in accordance with Section 724.012(b)(3)(B) of the Texas Transportation Code.  Section 724.012(b)(3)(B) of the Texas Transportation Code requires a peace officer to take a blood or breath specimen from a driver arrested for DWI who refuses to consent to the specimen if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person" has, on two or more occasions, been convicted or put on community supervision for DWI. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West, Westlaw through Ch. 46 2015 R.S.).

3

4. continued again travelling through the traffic light at Weber and County Road 244, and finally stopped Defendant's vehicle approximately one fourth of a mile north of the four way stop sign at Staples Street;

5. The video tape does not show clearly whether or not Defendant's tires ever completely cross over the center stripe, although it does show instances of appearing to touch the center stripe;

6. The distance Brandley followed Defendant was over five (5) miles (according to Google maps it is approximately eleven (11) miles from Leopard to Staples on that route of travel);

7. Brandley testified repeatedly that the reason for the traffic stop was for failing to drive in a single lane and gave no other reason for the traffic stop;

8. No evidence was presented by the State of Texas as to the amount of traffic on the road on April 13, 2013;

9. The State did not produce any evidence that Defendant was driving in an unsafe manner;

10. Defendant was arrested for D.W.I., third offense after Brandley conducted field sobriety tests (also on video); and

11. Defendant was taken to Christus Spohn Shoreline Hospital where a "mandatory" blood draw was taken pursuant to Transportation Code Sect. 745.

In conjunction with these facts, the court issued the following conclusions of law:

1. Brandley's testimony as to the basis of the traffic stop was not credible in light of the video tape evidence.

2. The State did not meet its burden to show that a traffic violation had occurred.

3. The State also produced no evidence that Defendant's driving created a safety concern to any other motorist.

4. The blood draw and blood evidence was unlawfully obtained, in violation of Defendant's constitutional and statutory rights afforded under the Texas and United States Constitutions and pursuant to *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

## II. SUPPRESSION OF EVIDENCE

The State claims the trial court erred in granting the Alvarez's motion to suppress. Specifically, the State argues Alvarez's detention was justified because of:    (1) Alvarez's alleged traffic infraction; and (2) the "community caretaker function" allowed Trooper Brandley to check on the welfare of Alvarez.   The State further argues that Alvarez voluntarily consented to giving a blood specimen.   We first consider the legality of Alvarez's detention.

### A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.   *Turrubiate v. State,* 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).   We review the trial court's factual findings for an abuse of discretion.   *Id.*   We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact-findings are based on an evaluation of credibility and demeanor.   *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).   The same deference is afforded the trial court with respect to its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor.   *Id.*   For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review.   *Id.*

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses.   *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc).   A trial court may choose to believe or to disbelieve all or any part of a witness's testimony.   *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc).   We must view the evidence in the light that is most favorable to the trial court's ruling, and we are obligated to uphold the trial court's ruling on a motion to suppress if that ruling is supported by the record and if it is correct under any applicable theory of

law.  *State v. Castleberry,* 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *Ross,* 32 S.W.3d at 855–56.

## B.    Traffic Offense

The State argues that Trooper Brandley had reasonable suspicion to initiate the traffic stop because Alvarez committed numerous traffic infractions by crossing several lines on each side of the three lane highway, two lane highway and divided highway. *See Gajewski v. State,* 944 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that police officer who observed defendant's vehicle weaving between lanes of traffic had reasonable suspicion of unusual activity related to criminal activity, thus justifying investigative detention).

### 1.    Applicable Law

A police officer may temporarily detain an individual for investigative purposes if he reasonably suspects that the individual is involved in criminal activity.  *Foster v. State,* 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry v. Ohio,* 392 U.S. 1, 27 (1968)). The Fourth Amendment requires some minimal level of objective justification for making the stop.  *See United States v. Sokolow*, 490 U.S. 1, 7 (1989).  "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."  *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  It requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry,* 392 U.S. at 27.  "A reasonable-suspicion determination is made by considering the totality of the circumstances."  *Ford,* 158 S.W.3d at 492–93.

## 2.  Discussion

The State's argument presumes Trooper Brandley actually witnessed a traffic violation before he initiated a traffic stop.   The trial court, not the appellate court, determines what a witness actually sees.   *See State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).   Trooper Brandley testified that at one point he witnessed Alvarez drive over the solid center stripe and then later cross the white "fog line" and the center stripe into oncoming traffic.   After reviewing the video of the traffic stop, the trial court concluded that contrary to Trooper Brandley's testimony, "the video does not show clearly whether or not [Alvarez's] tires ever completely cross over the center stripe." Although Trooper Brandley testified that Alvarez crossed into the oncoming lane, the trial court concluded that "Trooper Brandley's testimony as to the basis of the traffic stop was not credible in light of the video tape evidence."

Additionally, the trial court noted that "Trooper Brandley testified repeatedly that the reason for the traffic stop was for failing to drive in a single lane and gave no other reason for the traffic stop."   Trooper Brandley states in his probable cause affidavit— signed the day of Alvarez's arrest—that "I observed a vehicle in front of me swerving and failing to drive in a single lane."   Such a maneuver is not a per se violation of any law, and as noted by the trial court, there is no evidence that Alvarez was driving unsafely. *See State v. Cerny,* 28 S.W.3d 796, 800 (Tex. App.—Corpus Christi 2000, no pet.) (citing Tex. Transp. Code Ann. § 545.060(a) (West, Westlaw through Ch. 46 2015 R.S.)); *see also Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd) (concluding that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane and such movement is not safe or is not made safely); *State v. Tarvin*, 972

7

S.W.2d 910 (Tex. App.—Waco 1998, pet. ref'd) ("Although mere weaving in one's own lane of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity, there is nothing in the record to show that [the officer] believed any of the above to be the case.").

The trial court found that Trooper Brandley's testimony was not credible, and in light of this finding, that Trooper Brandley lacked reasonable suspicion to justify a stop. The trial court's findings reflect a credibility determination—specifically, that Trooper Brandley did not have a reasonable basis for believing that appellant committed a traffic offense. The trial court was entitled to disbelieve Trooper Brandley's testimony that he made the stop after seeing Alvarez cross the centerline. *See Duran*, 396 S.W.3d at 572. We give almost total deference to the trial court's credibility determination and conclude that the trial court's findings support a reasonable conclusion that Trooper Brandley did not see Alvarez commit a traffic offense sufficient to warrant reasonable suspicion to justify a stop. *See Crain,* 315 S.W.3d at 48.

## C. Community Caretaker Function

The State argues, alternatively, that Alvarez's stop was justified because of Trooper Brandley's community caretaking function.

### 1. Applicable Law

Even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community caretaking function. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (citing *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (en banc)). As

8

part of the duty to "serve and protect," a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help. *Id.*

The community caretaking function, however, is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Corbin*, 7 S.W.3d at 276-276 (quoting *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973)). As a result, a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose. *See Wright,* 7 S.W.3d at 151 ("we must determine if [the officer] acted reasonably when he stopped the vehicle *out of concern for the welfare of the appellant* ...") (emphasis added). Only in the most unusual circumstances will warrantless searches of private, fixed property, or stops of persons located thereon, be justified under the community caretaking function, given the greater expectation of privacy inherent with respect to residences and other private real property." *Id.* at 152*.*

## 2. Discussion

Trooper Brandley testified that the reason for the stop was Alvarez's purported "traffic violations," his straddling or crossing the lines on the freeway. Nowhere did he testify that the stop was predicated on a concern that Alvarez needed help. Although Trooper Brandley explained that he continued to follow Alvarez to determine whether he was texting, Trooper Brandley also testified that he followed and recorded Alvarez's driving behavior to "see if there was any other probable cause along the way that would cause [Trooper Brandley] to want to stop" Alvarez. The entirety of Trooper Brandley's interaction and observation of Alvarez was predicated on law enforcement. *Compare*

9

*Dombrowski*, 413 U.S. at 433 (holding that arresting officer properly exercised community caretaking function by searching disabled vehicle to recover vehicle owner's service revolver) *with Eichler v. State*, 117 S.W.3d 897, 902. (Tex. App.—Houston [14th Dist.] 2003, no pet.) (finding no community caretaking exception where defendant was stopped based on traffic violation and officer could not reasonably believe defendant needed assistance).

Even if Trooper Brandley was operating in his community caretaker capacity, his determination that Alvarez was in need of help must be reasonable. In determining whether an officer acted reasonably in stopping an individual to determine if he needs assistance, we consider the following four non-exclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Corbin*, 85 S.W.3d at 277; *Wright*, 7 S.W.3d at 152.

The first factor, nature and level of distress, is given the greatest weight. The record provides little evidence that Alvarez was in distress. Although Trooper Brandley expressed concern that Alvarez may have been texting, and swerving as a result, texting is not indicative of any level of distress. Aside from Alvarez's alleged driving infractions, there is no evidence that he behaved erratically. *See, e.g., Wright*, 7 S.W.3d at 151 (finding officer acted reasonably in stopping vehicle out of concern for welfare of defendant when defendant was leaning out of open rear window and vomiting at 4:00 a.m.). Alvarez's driving behavior does not appear to constitute a driver in distress.

The second factor is driver location. *See Corbin*, 85 S.W.3d at 278. Trooper Brandley stopped Alvarez in between the Weber and Staples intersections of Chapman Ranch Road. There is no evidence in the record that describes this area, much less that it is isolated with no businesses or houses nearby. At best, this is a neutral factor.

The third factor—whether or not the individual was alone and/or had access to assistance other than that offered by the officer—likewise does not weigh in favor of a stop. Alvarez was traveling with his wife, who could have presumably assisted Alvarez if needed.

Lastly, the fourth factor weighs against a stop. Even assuming that Trooper Brandley followed Alvarez out of concern that he was texting, and therefore distracted from his driving, there is no evidence in the record that Alvarez was actually texting. Moreover, we can find no authority to support the conclusion that texting is a condition that requires assistance.

We conclude that the State cannot justify Alvarez's detention based upon a community caretaking function. Trooper Brandley was clearly motivated to stop Alvarez based on a pursuit of law enforcement rather than to render aid and assistance. Applying the *Wright* factors, Trooper Brandley's stop cannot be justified under the community caretaking function. *See Wright*, 7 S.W.3d at 151.

**D.      Blood Evidence**

The State argues that the blood evidence should not be suppressed because Trooper Brandley gave the proper statutory warnings to Alvarez, and who expressly consented to the request for a blood sample.

11

### 1.      Applicable Law and Standard of Review

Notwithstanding an illegal arrest or detention, consent to search, freely and voluntarily given, is still one of the recognized exceptions to the requirement of both a warrant and probable cause for a valid search.   *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex. Crim. App. 1976).   While an illegal arrest, detention, or stop does not automatically invalidate a consent to search, neither will a voluntary consent automatically validate a search which follows an illegal arrest, detention, or stop.   *See Florida v. Royer,* 460 U.S. 491 (1983).   If the consent to search is found to have been voluntarily given, that is only one step in the determination of the propriety of the search.   *Howe v. State*, 874 S.W.2d 895, 902 (Tex. App.—Austin 1994, no pet.).   The consent may have been obtained by the exploitation of an illegal arrest or detention.   *Id.* (citations omitted).   The question then becomes whether the consent to search was obtained by the exploitation of an illegal arrest or detention or "by means sufficiently distinguishable to be purged of the primary taint."   *Brown v. Illinois*, 422 U.S. 590, 599 (1975) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)).

To establish the validity of consent after an illegal search or seizure, the State must prove by clear and convincing evidence that the taint inherent in the illegality had dissipated by the time consent is given.   *See Stone v. State*, 279 S.W.3d 688, 694 (Tex. App.—Amarillo 2006, pet. ref'd) (citing *Brick v. State*, 738 S.W.2d 676, 678 (Tex. Crim. App. 1987) (en banc)).   In determining whether the State has met its burden, we give almost total deference to the trial court's determination of historical facts.   *See id.* (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).   Relevant here, we

consider (1) the temporal proximity between the unlawful entry and the given consent; (2) whether the consent was volunteered or requested; and (3) whether defendant was made fully aware of the right to refuse consent. *See Stone v. State*, 279 S.W.3d 688, 693 (Tex. App.—Amarillo 2006, pet. ref'd) (citing *Brick,* 738 S.W.2d at 680–81).

### 2. Discussion

The duration between Alvarez's detention until his consent was short, a matter of minutes. Thus, the first factor weights against the dissipation of the taint of illegality. Next, the second factor favors suppression because Alvarez gave consent only after Trooper Brandley requested a blood specimen. Regarding the third factor, although Alvarez was informed that he had a right to refuse, immediately after he received the statutory warning, he was also informed that because of his two previous DWI convictions, Trooper Brandley was required "by law" to obtain a blood sample. This final factor weighs in favor of suppression since Alvarez was told that he could consent, but that the officer did not need his consent based on his prior criminal history. Given his situation, Alvarez's ability to refuse consent seems irrelevant.

We have reviewed the record to determine whether the trial court abused its discretion by finding that the State failed to prove by clear and convincing evidence that Alvarez had voluntarily given consent. Having conducted an analysis under the *Brick* factors, we cannot say that the trial court's finding was outside the zone of reasonable disagreement. *See Brick,* 738 S.W.2d at 680–81.

### E. Summary

Because, we give almost total deference to the trial court's credibility determination that Trooper Brandley did not see Alvarez commit a ticketable traffic offense, we conclude

that Trooper Brandley did not have reasonable suspicion to conduct a traffic stop. *See Duran*, 396 S.W.3d at 572. Furthermore, since his stop was motivated purely by law enforcement, Trooper Brandley was not exercising his community caretaker function. *See Wright*, 7 S.W.3d at 151. Lastly, even if Alvarez consented to a blood draw, the taint from the illegal stop had not dissipated when the consent was obtained. *See Stone,* 279 S.W.3d at 694. Therefore, we overrule the State's sole issue.

### III. CONCLUSION

The order of the trial court is affirmed.


GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of July, 2015.

14