**The STATE of Texas, Appellant,**

v.

**Jimmy Ray BARNETT, Appellee.**

**No. 277–89.**

Court of Criminal Appeals of Texas, En Banc.

April 25, 1990.

Theodore A. Hargrove, III (on appeal only), San Angelo, for appellee.

Dick Alcala, Dist. Atty. and Charlotte A. Harris, Asst. Dist. Atty., San Angelo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

In a motion to revoke probation, the State alleged that appellee violated the terms and conditions of probation by possessing amphetamine. Appellee was arrested during the execution of a search warrant at Paula Byrd's home. While the police had been searching Byrd's home, appellee, who was not named in the warrant affidavit, drove up in his car, whereupon he was immediately arrested and his car searched. Police discovered a small quantity of amphetamine in his car. Appellee filed a Motion to Suppress Evidence, alleging that the amphetamine was discovered pursuant to an illegal search and seizure. The trial court granted appellee's motion, and the State appealed. The Third Court of Appeals reversed the trial court's judgment and found that the search of appellee and his car did not exceed the scope of the search authorized by the warrant. See *State v. Barnett*, 764 S.W.2d 896 (Tex.App.—Austin 1989). We granted appellee's petition for discretionary review to determine whether the search of appellee's car was permitted under Article I, Sec. 9 of the Texas Constitution and the Fourth Amendment to the United States Constitution.

At about 4:20 p.m. on March 14, 1988, Detective Mickey Jones obtained a warrant from a Justice of the Peace to arrest Paula Byrd and search her home. At 5 p.m. that day, the detective and six San Angelo police officers, assisted by three C.I.D. detectives, executed the warrant and began searching her home at 1803 Pulliam Street, located adjacent to the Stockman's Club. Four cars, none belonging to appellee, were

parked in front of Byrd's home. At one end of the house, a detective found white powder in four small ziplock bags on the kitchen counter, later field-tested to be amphetamine. At the other end of the house, Detective Jones discovered luggage in a bedroom. Inside the luggage, officers found men's clothing and envelopes addressed to appellee at a location other than 1803 Pulliam.

. Forty-five minutes later, while the police were still in the process of searching Paula Byrd's home, appellee drove up. Detective Jones immediately ordered two officers to arrest appellee and search his car. While appellee was spread-eagled out on the hood of his car and frisked, the officers searched the interior of his vehicle. The police found a small quantity of a substance alleged to be amphetamine in a sunglasses case strapped on the sunvisor over the driver's seat.

The State filed a Motion to Revoke appellee's probation, alleging, among other things, that appellee had violated his probationary terms by possessing amphetamine. Appellee filed a Motion to Suppress Evidence, contending that the search and seizure were illegal.

The court convened a hearing on appellee's motion. Detective Jones was asked to articulate the basis on which he ordered the officers to arrest appellee. The detective said he "knew that [appellee] did have a criminal history," although he "didn't know exactly what for." Jones said that he had personally seen the appellee "in the company of persons that I knew to have been arrested for possession of methamphetamine," although he did not say when he had made this observation. According to Detective Jones, someone had informed him that the appellee "did deal methamphetamine with Paula Byrd and that he sometimes stayed with her" at her home; however, the detective made no mention of the informer's reliability, nor did he say when he had received the information or when or on what basis the informer made these allegations. The detective did say that reliable informants had told him—sometime within the previous six or eight

months—that appellee was "involved" in criminal activity. Detective Jones also testified that, within twenty-four hours before obtaining the search warrant, a reliable informant told him that "he [the informant] had personally seen [appellee] in San Angelo and had personally seen him in possession of methamphetamine and that he was trying to sell the methamphetamine." Finally, when asked on what basis he ordered the officers to search appellee, the detective said, "[b]ased on the information that I had received from the confidential informant who told me that he had been—he had seen him in possession of methamphetamine within the past 24 hours and the fact that we did find [appellee's] belongings inside the house and suspected amphetamine had been found in a common area of the house."

As for the search of appellee's car, the trial judge himself questioned the officer:

"Q. And on what basis did you go ahead and order the search of the vehicle itself?

A. The vehicle was parked on the premises at 1803 Pulliam and we had a search warrant for that premises, which included all vehicles.

THE COURT: You mean if I drive up on a place where you got a search warrant, you can search my car, Officer? Is that what you're saying?

THE WITNESS: If it's reasonable.

THE COURT: ... What doesn't authorize you to search a vehicle on the premises that drives up after you commence your search?

THE WITNESS: ... A vehicle ... [that] I wouldn't have any reason to believe would contain narcotics.

THE COURT: Just to surmise that it contains narcotics authorizes you to search a vehicle that drives up?

THE WITNESS: On the premises?

THE COURT: Yeah.

THE WITNESS: The fact that I had received information, recent information, that he was in possession of methamphetamine in San Angelo and that he was selling methamphetamine.

THE COURT: It authorizes you to search the vehicle?

THE WITNESS: Yes, sir.

THE COURT: I don't understand the law to be that way, but I'm willing to be educated.

THE WITNESS: I had a search warrant, sir.

THE COURT: For him?

THE WITNESS: No, for the premises.

THE COURT: You think that your search warrant ... covers not only [Byrd's premises and her car], but any other vehicle that may drive up?

THE WITNESS: Within reason, yes, sir."

The Third Court of Appeals agreed, sustaining the State's argument that "the search of appellee's automobile was authorized by the warrant because the vehicle was parked on the premises to be searched." *State v. Barnett*, supra at 898. The court of appeals relied primarily upon the authority of *United States v. Cole*, 628 F.2d 897 (5th Cir.1980), in which the search of a truck was upheld on the grounds that it was driven onto premises which were within the scope of a valid warrant. The appellate court also noted that courts are not in agreement about the rationale for such searches, citing *Miller v. State*, 516 So.2d 1118 (Fla.App.1987), and the dissent in *Cole*, supra. The court of appeals seemed to reason that the other information about appellee which Detective Jones possessed somehow brought the appellee's car within the scope of a warrant for the search of Paula Byrd's premises.

Before we address whether the search of appellee's car was valid, we will first determine whether the police were authorized to search any vehicles on the premises. The warrant issued by the magistrate commanded the "sheriff or any peace officer of Tom Green County, Texas" "to enter the suspected place and premises [1803 Pulliam] (including all other structures, places, and vehicles on the premises) described in said affidavit and to there search for" methamphetamine. The affidavit describes the "suspected place" with great particularity, but fails to list any suspected vehicles. The affidavit simply includes the parenthetical phrase "(Including all vehicles, outbuildings, and places on the premises.)"

■ The magistrate apparently concluded that all vehicles found on the premises of a suspect's home probably contained the contraband sought by the police. In so concluding, the magistrate assumed that the mere presence of vehicles at the suspect's home constituted probable cause to search those vehicles. This rationale was rejected by the Supreme Court in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, the Court held that a "person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search ... of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search ... another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations' of persons, not places." *Id.*, 444 U.S. at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245. For reasons equally compelling, we hold that the presence of an automobile on suspected premises, without more, does not give rise to search that automobile.

As the Court noted in *Ybarra*, the "Fourth Amendment directs that 'no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized.' Thus, 'open-ended' or 'general' warrants are constitutionally prohibited. [citations omitted] It follows that a warrant to search a place cannot normally be construed to authorize a search of each individual in that place." *Ybarra*, supra, n. 4. The Texas Constitution likewise commands that "no warrant to search any place ... shall issue without describing ... as near as may be, nor without probable

cause, supported by oath or affirmation." Tex. Const. Art. I, Sec. 9.

The search warrant requirement precludes general exploratory searches partly because it substitutes the detached and neutral judgment of a magistrate in the place of the suspicions and intuitions of law enforcement officers. Equally significant, the demand for particularity enables the magistrate to determine whether probable cause exists for the requested search. Once the probable cause has been established and the object of the search particularly described, the scope of the search "generally extends to the entire area in which the object of the search may be found." *United States v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 1270, 72 L.Ed.2d 572, 591 (1982).

In the present case, the object of the search was contraband allegedly possessed by Paula Byrd. A magistrate might have reasonably inferred from the affidavit that she may well keep the contraband on her own premises or within her own property, including her own car. But the affidavit gives no hint that her contraband might be found inside anyone else's vehicle. The affidavit gives no cause whatsoever to believe that contraband should be found in "all vehicles" which might be parked at Paula Byrd's home.

■ Fourth Amendment jurisprudence has recognized "a necessary difference between a search of a store, dwelling house or other structure ... and a search of a ship, motor boat, wagon or automobile, for contraband goods...." *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551 (1924). It is the mobility of vehicles which requires a more discriminating constitutional analysis. As the Supreme Court has emphasized, the nature of a vehicle in transit makes the securing of a warrant impracticable. See *Ross v. United States*, supra, 456 U.S. at 806, 102 S.Ct. at 2163, 72 L.Ed.2d at 582. However, where a warrant does exist to search fixed premises, the mobility of vehicles makes the particular description of vehicles in the affidavit necessary. This critical particularity requirement assures the magistrate that

the vehicles described are those for which there is cause to search. Moreover, it precludes governmental intrusion into vehicles of visitors or other travelers who may have unwittingly moved or parked their cars in an area being scanned for contraband.

It is difficult to conceive of a broader description than the phrase "[i]ncluding all vehicles." In fact, the phrase describes nothing in particular at all. There is nothing in the affidavit to suggest that contraband might be found in all the vehicles which might happen to be at the premises to be searched. When the police arrived, there were four vehicles parked in front of Paula Byrd's home. There is nothing in the affidavit which indicates that the police had reason to believe that these particular vehicles would contain contraband. Because the affidavit listed Paula Byrd as the only suspected party, and the affidavit contained no facts which suggested that she owned or possessed four vehicles, the police might have reasonably concluded that the vehicles belonged to visitors and not Paula Byrd.

It may be that contraband could be found in all vehicles on the premises. But the search of those vehicles requires the officer to explain under oath to a magistrate what probable cause exists to search those vehicles. If, for example, the police had probable cause to believe that Paula Byrd regularly kept four cars parked at her home packed with contraband, surely they could describe those cars to an issuing magistrate and explain their reasons for believing that they contained contraband.

It may also be that Paula Byrd, the person suspected to possess methamphetamine, might keep the contraband in her own car. But the warrant authorized the search of *all* vehicles which happened to be on or parked in front of the premises and the affidavit described no vehicle in particular at all. Such an all-inclusive description encompasses not only the suspect's vehicle, but all travelers whose connection to Paula Byrd is nothing more than the presence of their vehicles on or near her premises. The constitutions of the United States and Texas do not suppose that per-

sons parking their vehicles in, near or on the premises of a place to be searched relinquish their constitutional right to privacy in their own cars simply by their choice of a parking place. As the affidavit points out, Paula Byrd's home is located "directly next to and to the east of the Stockman's Club," an establishment patronized by people who may not know and have no connection with the resident of 1803 Pulliam.

■ The warrant seemed to be understood as authorizing a "search zone" which permitted the indiscriminate probe of all things and persons passing through it. It was the appellee's untimely arrival into this zone which was believed to sanction the search of the appellee's vehicle. Such a misconception assumes that the Fourth Amendment and Article I, Section 9 only protects that area not reasonably within the geographical scope of the search warrant. The freedom from unreasonable searches is a personal right, not an incorporeal hereditament. The appellee's car is constitutionally protected, not because it is in or out of any "search zone," but because the search warrant affidavit does not particularly describe it or state any reasons for its search.

The appellate court seemed to reason that the information which Detective Jones possessed at the moment the appellee drove up somehow brought the appellee's car within the scope of the warrant. The court of appeals discerned probable cause from the hearsay of various informants, reliable and otherwise, together with the luggage of men's clothing and envelopes addressed to the appellee. This court, however, cannot find where this probable cause is expressed in the warrant affidavit. None of the facts which the detective recited at appellee's hearing was ever conveyed to the magistrate, even though, according to his own testimony, he had this information when he approached the magistrate for the search of Paula Byrd's home. Thus, the magistrate could not have authorized the search of appellee's car when the affidavit upon which the warrant is based contains not the vaguest reference to any-

one's vehicle in particular. See, e.g., *Hall v. State*, 394 S.W.2d 659 (Tex.Cr.App.1965).

■ Of course, the affidavit did include the phrase "all vehicles." Even assuming that such a phrase can meet the constitutional standard of particularity, and further indulging that the magistrate did have cause to authorize the search of all vehicles at Paula Byrd's house, appellee's car could not have been one of the vehicles to which the warrant referred because the appellee's car was not on the premises when the magistrate determined probable cause. The magistrate found probable cause to search "all vehicles" on the premises of 1803 Pulliam; the appellee's car was not on the premises when the magistrate made her determination. How a magistrate can include within the scope of a search warrant a vehicle which is not "on the premises" when the probable cause determination is made is a mental acrobatic too nimble for this court to duplicate.

We therefore reverse the judgment of the court of appeals and remand the cause for that court to consider the remaining two points of error.

McCORMICK, P.J., and MILLER, CAMPBELL, WHITE, BERCHELMANN and STURNS, JJ., concur in the result.