TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00302-CR







Jerry Salazar Machado, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-93-336, HONORABLE JOE DIBRELL, JR., JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of possessing 200 grams or more of cocaine with
intent to deliver and assessed punishment at imprisonment for seventy-five years. Controlled
Substances Act, 71st Leg., R.S., ch. 678, sec. 1, § 481.112, 1989 Tex. Gen. Laws 2230, 2935
(Tex. Health & Safety Code Ann. § 481.112, since amended). Appellant brings forward seven
points of error challenging the sufficiency of the evidence and complaining of the overruling of
his motions to suppress evidence and other alleged trial errors.


1. Sufficiency of evidence.

 On January 8, 1993, police officers executed a warrant to search appellant's
residence on Highway 21 in Hays County. Also living in this house was Rita Cabello, who is
alternately described in the testimony as appellant's wife or girlfriend. In an unlocked bedroom
safe, the officers found a plastic bag containing 271 grams of cocaine of 84 percent purity, $5900
in cash, and an envelope on which was written "property of Jerry Salazar Machado." The police
also found in the bedroom numerous photographs of appellant and Cabello, both man's and
woman's clothing, a small bag of marihuana, utility bills addressed to appellant, and a rifle. 
Elsewhere in the house the officers found a pistol and ammunition, scales, two more bags of
marihuana, and a box containing several small bags of cocaine. More cocaine was found in a
pickup truck parked outside the house that appellant had been driving earlier that day. An
insurance identification card in the truck named appellant as the insured. 

 Also on January 8, an undercover officer purchased four "sixteenths" (one sixteenth
ounce) of cocaine from Steven Chavarria at Chavarria's apartment in Caldwell County. The
officer gave four $100 bills to Chavarria in payment. These bills were found in appellant's wallet
during a search of his person that preceded the search of appellant's house. A narcotics
investigator testified that the quantity of cocaine found in appellant's residence exceeded that
ordinarily kept for personal use. 

 Appellant contends the evidence is insufficient to sustain the verdict because the
State failed to prove that the cocaine weighed 200 grams or more. The evidence reflects that the
cocaine found in the safe, State's exhibit eight, was a solid block. The chemist who analyzed this
exhibit and the other suspected contraband testified that this was "typical of rock cocaine or
cocaine right out of the kilo." The chemist explained that he ground approximately half of the
block into a powder, from which he took the samples he used for analysis. The chemist testified
that State's exhibit eight weighed 271.35 grams and was 84 percent pure cocaine. (1) A simple
calculation determines that this exhibit contained 227.93 grams of pure cocaine, more than enough
to support the verdict.

 Appellant argues, however, that it cannot be assumed that the untested portion of
exhibit eight also contained cocaine of the same purity as the portion tested. Appellant relies on
our opinion in Thorpe v. State, 831 S.W.2d 548 (Tex. App.--Austin 1992, no pet.). That case was
a prosecution for possessing at least 28 grams of cocaine, including adulterants and dilutants. The
evidence showed that the defendant had in his possession chunks of what appeared to be crack
cocaine, that these chunks weighed 43.93 grams, that the chunks contained an undetermined
amount of cocaine, and that the remainder of the chunks consisted of unknown substances that
might include adulterants and dilutants. Relying on opinions of the Court of Criminal Appeals, (2)
we determined that the evidence was not sufficient to establish that the material possessed by the
defendant contained at least 28 grams of cocaine, adulterants, and dilutants. 831 S.W.2d at 551. 


 Thorpe is easily distinguished from this cause. In Thorpe, the State proved the total
weight of the suspect material but did not prove how much of this total was attributable to the
proscribed substances. Therefore, the State failed to prove that the defendant possessed cocaine,
adulterants, and dilutants in the quantity required to sustain the jury's verdict. In this cause, on
the other hand, the State proved both the total weight of the suspect material and the percentage
of pure cocaine contained in the material. 

 The use of random sampling to determine the composition of a suspected controlled
substance was recently approved by the Court of Criminal Appeals. Gabriel v. State, No. 088-93
(Tex. Crim. App. March 8, 1995), affirming 842 S.W.2d 328 (Tex. App.--Dallas 1992). A
concurring opinion contains a statement that is directly applicable to the cause before us: "[B]y
and large it is sufficient to extrapolate from a random sample of an apparently homogeneous
substance found in a single receptacle that the whole of the substance is the same." Gabriel, slip
op. at 8 (Clinton, J., concurring). The material in State's exhibit eight was found packaged in a
single plastic bag. The chemist testified that the entire block appeared to be one homogeneous
substance: "The texture, the color does not indicate that there is anything that it's contaminated
with[,] that it's not nonhomogeneous. What I'm dealing with is what I typically see day in and
day out. And 84 percent is typical of cocaine out of a kilo." A rational trier of fact could
reasonably infer from the evidence that the untested portion of exhibit eight was the same as the
tested portion and that the entire exhibit was 84 percent pure cocaine. (3) 

 Appellant also contends the evidence is insufficient because the State failed to prove
that he had exclusive control of the cocaine. This contention is without merit, since possession
of a controlled substance need not be exclusive. Evidence showing that the defendant jointly
possessed the contraband with another is sufficient to sustain a conviction. Martin v. State, 753
S.W.2d 384, 387 (Tex. Crim. App. 1988). In this cause, the evidence detailed above is sufficient
to support a finding that appellant knowingly exercised care, custody, and control over the
cocaine.

 In determining the legal, or constitutional, sufficiency of the evidence to support
a criminal conviction, the question is whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State,
820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App.
1981). The evidence in this cause meets this test. Point of error one is overruled. 


2. Search warrant. 

 Appellant argues that the warrant to search his house was unlawfully issued because
the supporting affidavit did not state probable cause for the search. As a consequence, appellant
contends the cocaine and other evidence seized during the search should have been suppressed. 
Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 1995). 

 No search warrant may issue unless supported by an affidavit setting forth
substantial facts establishing probable cause for its issuance. Tex. Code Crim. Proc. Ann. art.
18.01(b) (West Supp. 1995). Probable cause to support the issuance of a search warrant exists
when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of
the search is probably on the premises at the time the warrant is issued. Cassias v. State, 719
S.W.2d 585, 587 (Tex. Crim. App. 1986). In reviewing the sufficiency of a search warrant
affidavit, we use "totality of the circumstances" analysis. Illinois v. Gates, 462 U.S. 212 (1983);
Eisenhauer v. State, 754 S.W.2d 159, 164 (Tex. Crim. App. 1988). A reviewing court is limited
to the four corners of the affidavit. Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App.
1992). The magistrate is permitted to draw reasonable inferences from the affidavit, however,
and the affidavit should be interpreted in a common sense and realistic manner. Lagrone v. State,
742 S.W.2d 659, 661 (Tex. Crim. App. 1987). Great deference must be given to the trial court's
ruling on a motion to suppress and it will not be disturbed on appeal absent an abuse of discretion. 
Black v. State, 776 S.W.2d 700, 701 (Tex. App.--Dallas 1989, pet. ref'd).

 The affidavit presented to the issuing magistrate is attached to this opinion as an
appendix. It describes three purchases of cocaine by an undercover member of a drug task force
then operating in Hays and surrounding counties. Each delivery took place at the apartment of
Steven Chavarria on Highway 80 in Caldwell County. On December 4 and 10, 1992, the cocaine
was brought to Chavarria's apartment by a woman named Barbara Mindiola. On January 8, 1993,
Chavarria took delivery of the cocaine from Mindiola in the parking lot of a sandwich shop in San
Marcos, after which he returned to his apartment to complete the transaction with the undercover
officer. On each occasion, Chavarria told the undercover officer that Mindiola got the cocaine
from her brother. Mindiola's brother is not named in the affidavit, however, and these statements
by Chavarria do not implicate appellant in the unlawful activities described in the affidavit. (4) In
addition, the December 4 and 10 transactions were not shown involve any activity at the house
on Highway 21. Thus, if probable cause to search the house is to be found in the affidavit, it
must be in the description of the January 8 transaction.

 On January 8, the undercover officer arranged to purchase four sixteenths of
cocaine from Chavarria, paying with four $100 bills whose serial numbers had been recorded. 
After arranging to meet Mindiola at the sandwich shop, Chavarria drove to a house on Linda Lane
in San Marcos, went inside for a few minutes, then left. A short time later, Mindiola arrived at
the Linda Lane house, was joined by a second woman, and drove away. Mindiola was followed
by surveillance officers on a circuitous route that ultimately took her and her passenger to the
house on Highway 21. The two women in the car were greeted by a third woman who emerged
from the house. (5) The three women went inside. A short time later, Mindiola and her companion
left and drove to the sandwich shop, where Chavarria was waiting in his red pickup truck. 
Mindiola walked over to Chavarria's truck, spoke to him briefly, then entered the sandwich shop. 
Chavarria drove across the street, where he was joined by an unidentified man who was waiting
in a parking lot. The two men were observed bending over together in the seat of the truck. They
then drove to Chavarria's residence, where the sixteenths were delivered to Gray. Chavarria was
arrested at this time. Before invoking his right to remain silent, Chavarria told the police that he
purchased the cocaine from Mindiola in the sandwich shop parking lot.

 Meanwhile, officers watching the house on Highway 21 saw two men and a woman
(the same woman seen at the house earlier) leave the house and drive away in a gray pickup truck. 
The truck was stopped and appellant, who was the driver, was asked if he had any money. 
Appellant opened his wallet, inside of which were the four $100 bills Gray had given Chavarria
earlier that day. (6)

 The affidavit's description of the activities of Chavarria, Mindiola, and appellant
on January 8, together with the inferences that reasonably may be drawn from these activities, is
sufficient, we believe, to support a finding that the cocaine Mindiola delivered to Chavarria, and
that Chavarria then delivered to the undercover officer, came from the house on Highway 21. 
The manner by which Mindiola drove to the house, using a meandering route with frequent stops
during which she never left her car, supports an inference that Mindiola was attempting to
determine if she were being followed. After briefly entering the house on Highway 21, Mindiola
drove immediately to the sandwich shop for her prearranged meeting with Chavarria, abandoning
the circuitous route and frequent stops that previously characterized her driving. The magistrate
could reasonably infer from Mindiola's eagerness to arrive at the sandwich shop that she had
acquired the cocaine at the house on Highway 21 and was anxious to make the delivery and
minimize the risk of detection. Although the transfer of the cocaine from Mindiola to Chavarria
was not actually seen, Chavarria's statement to the police that he obtained the cocaine from
Mindiola in the sandwich shop parking lot was entitled to the magistrate's belief because it was
consistent with Mindiola's known involvement in the December 4 and 10 transactions. Finally,
appellant later left the house on Highway 21 in the company of the woman who greeted Mindiola
when she arrived at the house and in possession of the money given to Chavarria by the
undercover officer. This further supports the conclusion that the cocaine delivered on January 8
came from the house on Highway 21.

 We hold that the affidavit presented to the magistrate on January 8, when read in
a common sense manner, contained substantial facts establishing probable cause to believe that
cocaine was in the house on Highway 21 at the time the search warrant was issued. Appellant
does not challenge the adequacy of the affidavit with regard to the other items ordered seized. 
Point of error seven is overruled.


3. Stop of pickup and search of wallet. 

 In points of error three and four, appellant contends he was unlawfully stopped
after leaving his house on January 8 and that his consent to search his wallet was both involuntary
and tainted by the unlawful stop. A person may be detained for investigatory purposes if, based
on the totality of the circumstances, there is a particularized and objective basis for suspecting the
person detained of criminal activity. United States v. Cortez, 449 U.S. 411 (1981); Johnson v.
State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983); Giossi v. State, 831 S.W.2d 887, 889 (Tex.
App.--Austin 1992, pet. ref'd). We have already discussed the facts known to the police at the
time appellant's truck was stopped, as those facts are reflected in the search warrant affidavit. 
We believe those facts, together with the inferences arising from those facts, gave the police
reasonable grounds for suspecting that the people seen leaving the house on Highway 21 were
involved in Chavarria's and Mindiola's cocaine dealing, and thus to detain them for further
investigation. Point of error three is overruled.

 Because the stop of appellant's truck was lawful, there was no illegality to taint his
subsequent consent to the search of his wallet. Nevertheless, appellant's consent must also have
been voluntary. The burden of proving that consent was freely and voluntarily given cannot be
discharged by showing an acquiescence to a claim of lawful authority. Reyes v. State, 741
S.W.2d 414, 430 (Tex. Crim. App. 1987); Howe v. State, 874 S.W.2d 895, 901 (Tex.
App.--Austin, no pet.). The police may not use coercion, actual or implied, to obtain permission
to search. Howe, 874 S.W.2d at 901. Appellant argues that he was merely submitting to a show
of authority when he gave his wallet to the investigator, noting that he was surrounded by two
uniformed officers and approximately four narcotics investigators. But appellant's claim that his
will was overborne is rebutted by testimony that, moments after allowing the officer to search his
wallet, appellant refused to permit the police to search his house without a warrant. We find that
the totality of the circumstances supports the conclusion that appellant freely and voluntarily
consented to the search of his wallet. Accordingly, the district court did not err by refusing to
suppress the four $100 bills found therein. Point of error four is overruled.


4. Search of pickup.

 Officers executing the warrant to search appellant's house also searched his pickup
truck, which was parked outside the house. Cocaine was found in the truck and seized. Appellant
contends the search of the truck exceeded the scope of the warrant and was therefore in violation
of the Texas Constitution. Tex. Const. art. I, § 9. (7)

 A warrant authorizing the search of identified premises encompasses vehicles found
on the premises. Hughes v. State, 843 S.W.2d 591, 594-95 (Tex. Crim. App. 1992); Keen v.
State, 626 S.W.2d 309, 313 (Tex. Crim. App. 1981). The opinion on which appellant relies,
State v. Barnett, 788 S.W.2d 572 (Tex. Crim. App. 1990), is factually distinguishable because
the vehicle searched in that case was not on the premises when execution of the warrant began. 
Moreover, the Court of Criminal Appeals has stated that Barnett, a plurality opinion, was overly
broad to the extent that it held that officers may not search any vehicles parked at suspected
premises, including vehicles on the premises at the initiation of the search and belonging to or
within the control of the owner or occupants of the premises. Hughes, 843 S.W.2d at 594 n.4.

 Appellant's pickup was on the premises covered by the search warrant when the
search began. Appellant was seen driving the pickup earlier that day. Cocaine and other
contraband were found in the house before the truck was searched. Under the circumstances, the
search of the truck did not exceed the scope of the officers' authority under the warrant. Point
of error six is overruled.


5. Other trial errors.

 Appellant objected to the admission of the firearms found in his house on the
ground that he had not been notified in advance of trial of the State's intent to introduce the
weapons in evidence. Tex. R. Crim. Evid. 404(b). Assuming that the rule 404(b) notice
requirement applied to these exhibits, no error is presented. Appellant was tried twice for this
offense, the first trial ending in a hung jury. It is undisputed that the firearms were introduced
in evidence during the first trial. We believe this constituted adequate notice to appellant that the
State would seek to introduce the firearms at the second trial. Alternatively, the State's failure
to give formal notice prior to the second trial was, under the circumstances, harmless beyond a
reasonable doubt. Tex. R. App. P. 81(b)(2). Point of error five is overruled.

 Finally, appellant contends the district court erred by failing to apply the law of
parties to the facts of the case. At the State's insistence and over appellant's objection, the district
court instructed the jury on the general law of criminal responsibility for the conduct of another. 
See Tex. Penal Code Ann. §§ 7.01, 7.02 (West 1994). In applying the law to the facts, the court
authorized appellant's conviction if the jury found that he, "either acting alone or acting together
with Rita Ann Cabello as a party, as that term is hereinbefore defined," possessed more than 200
grams of cocaine with intent to deliver. Appellant objected that the application paragraph "fail[ed]
to allege the specific acts that the State is relying on to make this Defendant a party." In
particular, appellant complained that the charge did not specify the mode of conduct (soliciting,
encouraging, directing, aiding, or attempting to aid) that formed the basis for his conviction as
a party. See Penal Code § 7.02(a)(b). This objection was also overruled.

 We agree with appellant that it was error for the district court to refuse his request
for a more explicit application of the law of parties to the facts of the case. Johnson v. State, 739
S.W.2d 299, 305 (Tex. Crim. App. 1987). Whether this error requires reversal depends on
whether it caused at least some harm to appellant. Id.; Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (opinion on rehearing). 

 If the evidence clearly supports the defendant's guilt as a principal actor, any error
in charging on the law of parties is harmless. Black v. State, 723 S.W.2d 674, 675 (Tex. Crim.
App. 1986); Govan v. State, 682 S.W.2d 567, 570-71 (Tex. Crim. App. 1985); Ruiz v. State, 766
S.W.2d 324, 326 (Tex. App.--Houston [14th Dist.] 1989, no pet.). Appellant argues that the
evidence does not clearly support his guilt as a principal because he was never shown to be
personally involved in the various cocaine deliveries. This was not, however, a prosecution for
delivery of cocaine, but for possession of cocaine with intent to deliver. We will not extend the
length of this opinion by repeating the evidence previously described. It is sufficient to state that
the evidence clearly supports the conclusion that appellant personally possessed the cocaine found
in his house, and that he did so with intent to deliver. Under the circumstances, the error in the
charge on the law of parties was harmless. Point of error two is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: May 3, 1995

Do Not Publish
1. The remaining 16 percent consisted of byproducts of the process by which the cocaine
was extracted from the coca plant.
2. Cawthon v. State, 849 S.W.2d 346 (Tex. Crim. App. 1992); Reeves v. State, 806 S.W.2d
540 (Tex. Crim. App. 1990).
3. The use of random sampling was not at issue in Thorpe and we find nothing in the
plurality and concurring opinions in Gabriel that conflicts with our opinion in that case.
4. There was testimony at the hearing on appellant's motion to suppress that appellant
and Mindiola are brother and sister. It is unclear when the police learned this. We do not
consider this fact in deciding the probable cause points of error.
5. At the suppression hearing, this woman was shown to be Rita Cabello. Again, we do
not take this fact into consideration in deciding the probable cause issues.
6. In separate points of error, appellant contends the stop of his truck and search of his
wallet were unlawful. We will overrule both of these points of error. Therefore, we reject
appellant's contention that this portion of the affidavit should not be considered in
determining if the affidavit states probable cause.
7. Although appellant relies solely on the Texas Constitution, his brief contains neither
argument nor authority suggesting that, as applied to the facts in this cause, our state
constitution's guarantees differ in any meaningful way from the guarantees found in the
United States Constitution. See DeBlanc v. State, 799 S.W.2d 701, 706 (Tex. Crim. App.
1990); McCambridge v. State, 712 S.W.2d 499, 501-02 n.9 (Tex. Crim. App. 1986). Further,
the opinion on which appellant relies does not distinguish between state and federal constitutional
jurisprudence. State v. Barnett, 788 S.W.2d 572 (Tex. Crim. App. 1990).