# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00323-CR

### Esteban Gonzalez, Appellant

### v.

### The State of Texas, Appellee

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR-06-355, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Esteban Gonzalez guilty of the aggravated kidnapping and aggravated sexual assault of his estranged wife. *See* Tex. Penal Code Ann. §§ 20.04, 22.021 (West Supp. 2007). The jury assessed appellant's punishment for the kidnapping at ten years' imprisonment, probated. The jury assessed a twenty-year prison term and a $10,000 fine for the sexual assault.

In three points of error, appellant contends the trial court erred by permitting the State to comment on appellant's post-arrest silence, by denying appellant the right to cross-examine the complainant regarding a civil lawsuit she had filed based on the same incident, and by admitting testimony regarding the pattern of domestic abuse. Finding no reversible error, we overrule the points of error and affirm the conviction.

## BACKGROUND

Appellant and the complainant were married in 1996 and had three children. After the death of appellant's former wife, his four children from that marriage came to live with him and the complainant. In December 2003, the complainant told appellant that she wanted a divorce. In January 2004, the complainant and her three children moved out of appellant's house and began living with her parents.

On the morning of February 12, 2004, appellant called the complainant to tell her that he had received their income tax refund check. Appellant and the complainant had previously agreed that they were going to use this money—approximately $5,300—to pay several of their debts. The complainant agreed to meet appellant later that morning at a check-cashing service.

After they cashed the check, appellant and the complainant sat in appellant's car (the complainant sat in the back seat) to discuss the bills. Appellant suddenly started the car and drove away despite the complainant's demand that he stop and let her out. The complainant testified that she had her cell phone with her, but she did not call for help because she did not anticipate what would happen. Appellant drove to a nearby motel, where he told the complainant that there was someone in a room who could prove that she had been unfaithful during their marriage. The complainant agreed to go upstairs with appellant to meet this person, but she told him that she would not go inside the room.

When they arrived at the second-floor room, appellant pushed open the door, seized the complainant by the arm, and began to pull her inside. The complainant testified, "I knew I was in trouble." She grabbed a railing and called out to a nearby motel maid for help. She lost her grip

2

on the railing and appellant succeeded in pulling her into the room. The complainant said that she tried to call 911, but appellant seized the telephone before she could complete the call. Meanwhile, the maid reported what she had seen and the desk clerk called the room. Appellant answered the phone and told the clerk that he and his wife were having marital problems and that things were all right. The motel staff accepted this answer and did not call the police.

Inside the room, the complainant noticed a number of rags that had been cut into strips.[1] Appellant began to question the complainant about certain calls he had highlighted on their cell phone bill. When the complainant attempted to leave the room, appellant seized her and threw her onto the bed. The complainant testified that she screamed and tried to resist, but appellant was too strong. Appellant tried to gag the complainant with one of the rags. The complainant began to hyperventilate, and appellant allowed her to get up and go to the sink. In hopes of calming appellant, the complainant decided to tell him "what he wanted to hear," which was that she would consider a reconciliation. She also asked appellant to take her to a restaurant near the motel where they had previously eaten. Appellant agreed to do this if the complainant would engage in sexual intercourse. She initially refused, but after further attempts to escape from the room were unsuccessful, she agreed. She explained that she believed that she "wouldn't walk out of that room alive" otherwise. The complainant removed her pants and underwear, and appellant penetrated her anally.

After the assault, appellant and the complainant left the motel room to drive to the restaurant. The complainant testified that she did not cry out to anyone as they left the room because

---

[1] The police would later find in the room a video camera, ligatures tied to the bed, a vibrator, and women's underwear.

3

she had earlier been unable to get help at the motel. After appellant and the complainant were seated at the restaurant, the complainant excused herself and went to the restroom. She locked herself in a stall and called the attorney she had hired to handle the divorce. After hearing her story, he told her to call 911. She did, and then waited in the stall and continued to talk to the 911 operator until she was told that appellant was in custody and that police officers were waiting outside the restroom door. Appellant was taken into custody as he stood outside the restaurant.

## DISCUSSION

In point of error one, appellant contends that the trial court erred by permitting the State to comment on his post-arrest silence and by refusing to instruct the jury to disregard the comment. In Texas, a defendant's post-arrest silence cannot be used against him at trial. *Sanchez v. State*, 707 S.W.2d 575, 578 (Tex. Crim. App. 1986); *Hampton v. State*, 121 S.W.3d 778, 782-83 (Tex. App.—Austin 2003, pet. ref'd).

While cross-examining one of the officers who responded to the complainant's 911 call from the restaurant, defense counsel took pains to establish that the police had arrested appellant on the strength of the complainant's accusations and without first obtaining a statement from him. On redirect, the prosecutor confirmed with the officer that the trial was being held three years after appellant's arrest. She then began to ask, "Has this defendant—." Defense counsel interrupted and, at the bench, objected that the prosecutor was about to ask whether appellant had given a statement during the three years following his arrest. The court did not expressly rule on the objection, but it instructed the jury not to "speculate about what the question was going to be." The prosecutor then asked the officer, "When a person is taken to the police station, do they have the ability to give a

4

statement if they want to?" Again, defense counsel objected. The court admonished the prosecutor, "[T]hat's not going to be allowed. You can't comment on whether or not he exercised his Fifth Amendment right, period. There will be no discussion on that." Defense counsel asked the court to instruct the jury to disregard "the same thing." The court responded, "I'm not going to instruct the jury anything. I just told her she can't ask the question about whether or not he exercised his Fifth Amendment rights." Counsel then asked the court to instruct the jury to disregard "the implication that was made." The court did not rule on this request and the officer was excused without further questions by the State.

The State argues that appellant opened the door to the prosecutor's questions through his cross-examination of the officer. But appellant's questions to the officer concerned whether appellant made a statement *before* he was arrested. The prosecutor's questions concerned whether appellant made a statement *after* he was arrested. The right to remain silent arises when the defendant is arrested. *Sanchez*, 707 S.W.2d at 580. Contrary to the State's argument, it was not necessary for appellant to expressly invoke his right to silence. Because the right against self-incrimination arises when the defendant is arrested, any post-arrest silence is *presumed* to be an exercise of that right. *Id.*

The trial court correctly prevented the prosecutor from expressly asking the officer whether, during the three years between his arrest and his trial, appellant had given a statement to the police denying the complainant's allegations. Although this was the implication of the prosecutor's question as to whether a person "taken to the police station" has "the ability to give a statement if they want to," the question was not answered and appellant did not obtain a ruling on his request for

5

an instruction to disregard "the implication that was made." *See* Tex. R. App. P. 33.1(a)(2)(A). We also note that, just before the exchange quoted above, appellant failed to object when the prosecutor asked the officer, "Did [appellant] ever offer to make a statement to the police?" The officer answered, "Not to me." To preserve error, a party must object each time the inadmissible evidence is offered. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). Because substantially identical testimony was offered without objection, no error is presented. Point of error one is overruled.

In his second point of error, appellant urges that the trial court erred by refusing to allow him to cross-examine the complainant regarding a civil suit she filed against the motel where the assault occurred. We review the court's decision to exclude evidence for an abuse of discretion. *See Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006).

The record reflects that the complainant filed a lawsuit for damages against the operators of the motel. The suit was settled two years before appellant's trial, and appellant's attempt to obtain discovery regarding the details of the settlement was the subject of a pretrial hearing. Before trial, the State filed a motion in limine to prevent appellant from offering evidence regarding the suit. In accord with the State's motion, appellant asked the court for permission during the trial to cross-examine the complainant regarding the lawsuit. The court refused this request, ruling that "any motive she might have had to enhance her financial settlement with a lawsuit with [the motel] would have expired two years ago, when she settled it."

A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify. *Carroll v. State*,

6

916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Evidence that the complainant has brought a civil suit against the defendant growing out of the same incident is admissible as tending to show bias and interest. *See Cox v. State*, 523 S.W.2d 695, 700 (Tex. Crim. App. 1975). Under certain circumstances, evidence of the complainant's civil suit against a third party may also be relevant to show bias. *Compare Hoyos v. State*, 982 S.W.2d 419, 421-22 (Tex. Crim. App. 1998) (holding there was no error in excluding evidence of complainant's civil suit), *with Shelby v. State*, 819 S.W.2d 544, 545 (Tex. Crim. App. 1991) (holding trial court erred by refusing to allow cross-examination regarding civil suit); *Furgison v. State*, 800 S.W.2d 587, 589-91 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (same).

A closer question would be presented if the complainant's civil suit against the motel had been pending at the time of appellant's trial. We agree with the trial court, however, that the complainant's settlement of the suit two years before trial removed any apparent financial incentive she might have had for testifying against appellant. We also note that the trial court permitted appellant to offer evidence that the complainant obtained financial remuneration for appellant's acts in the divorce case. No abuse of discretion is shown, and point of error two is overruled.

Finally, appellant contends that the trial court should not have admitted testimony about what the prosecutor referred to as the "dynamics" or "cycles" of domestic abuse. He urges that whatever relevance the testimony might have had was outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Once again, we review the trial court's ruling for an abuse of discretion. *See Oprean*, 201 S.W.3d at 726.

The witness was Officer Penny Dunn, an eighteen-year veteran of the San Marcos Police Department. Dunn began her testimony by describing her special training "related to domestic violence investigation, . . . sexual assault investigations, . . . those types of things." She said that she was part of the department's "domestic violence investigation team . . . that relates to specialized training, evidence collection, dealing with victims after domestic violence." Dunn then stated that she had trained "in excess of 500 individuals" including "[o]fficers, dispatchers and civilian staff" with respect to domestic violence investigations.

Before Dunn could testify further, appellant challenged her expertise—an issue he does not pursue on appeal. Appellant also objected to any testimony regarding "battered women's syndrome" on the ground that it would be more prejudicial than probative, citing rule 403. Appellant argued that such testimony would cause the jury to "assume that he's just beat the hell out of her on a regular basis." The trial court overruled the rule 403 objection, holding that Dunn would be permitted to testify for "the limited purpose" of showing that "it's not unusual for battered women to not leave the home, remain in the home and stay with the person that's been the source of their antagonism."

Continuing her testimony, Dunn said that instances of domestic violence that result in police calls are usually preceded by several unreported instances of abuse; the average is eight unreported incidents. She said that typically there is a "long manipulative process" during which abuse victims are made "more vulnerable and less likely to outcry." Dunn indicated that it was not unusual for domestic abuse victims to remain with their abusive partner and to keep the abuse a

secret, even from close family members. She opined that domestic abuse victims fail to report the abuse due to fear, shame, and embarrassment.

Then, over appellant's objection that it was irrelevant, Dunn was allowed to describe a recent, unrelated investigation in which she was involved. In that case, the abused wife had been battered and sexually assaulted by her husband for years, but she never sought help. The wife called the police, said Dunn, only after the husband "strangled her and she lost consciousness."

Dunn next described her involvement in the investigation of this case. Over appellant's objection that she was invading the province of the jury, Dunn expressed the opinion that the complainant had been the victim of domestic violence.

Finally, after another rule 403 objection was overruled, Dunn testified that domestic abuse involves a "cycle of violence." First, there is the "tension-building stage" in which the victim seeks to avoid a violent incident. Next, there is the violence itself, "which may be brief or go for a long period of time." Last, there is the "respite or honeymoon phase" during which the abuser will be apologetic and suggest to the victim that the violence was the victim's fault. Dunn testified that for this cycle to end, there must be "some type of intervention or some consequences suffered by the batterer to make them stop."

The State argues that Dunn's testimony was relevant to rebut appellant's defense, which was that the complainant had voluntarily gone to the motel room, had consented to the sex act, and had falsely accused appellant in order to help her divorce case. This, suggested the defense, explained why the complainant did not cry out for help as she left the room following the alleged assault and why persons standing outside the room heard no unusual noises while the assault was

9

allegedly taking place. The State primarily relies on the opinion in *Scugoza v. State*, a prosecution of a husband for the assault of his wife, in which the complaining witness, in her trial testimony, disavowed much of what she had told the police on the night of the assault. 949 S.W.2d 360, 362-63 (Tex. App.—San Antonio 1997, no pet.). The court of appeals concluded that expert testimony describing the cycle of abuse in family violence situations was properly admitted to explain the inconsistencies between the complainant's testimony and her previous statements to the police. *Id*. at 363. Appellant acknowledges the holding in *Scugoza*, but urges that it is not applicable here because the complainant made her outcry almost immediately and never changed her story. Appellant argues that Dunn's testimony was not relevant to any issue in the case, and that it served only to suggest to the jury that he was a long-term abuser of his wife.

Appellant did not object on rule 403 grounds to Dunn's testimony describing her other recent investigation or to her opinion that the complainant was the victim of domestic violence. Therefore, we do not reach the question whether that testimony was more prejudicial than relevant. We agree with appellant that Dunn's description of the patterns and dynamics of spousal abuse, to which he did make rule 403 objections, had little relevance to this case. The complainant did not display the behavior of the "typical" abused spouse as described by Dunn or of the abused spouse in *Scugoza*. She did not delay making her outcry against appellant by even a few days, and her testimony was consistent with her initial outcry. Dunn's opinion as to why an abused spouse might allow the abuse to continue for months before making an outcry did not speak to the complainant's failure to call 911 on her cell phone while appellant drove from the check cashing service to the motel or to her failure to cry out to bystanders when leaving the motel to go to the restaurant, nor did

10

it rebut appellant's defensive theory that the complainant's accusations were false. In short, Dunn's testimony did not serve to make more probable any fact of consequence to the State at this trial. *See Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g). At the same time, appellant was correct to argue that Dunn's testimony had the potential to impress the jury in an irrational but nevertheless indelible way by raising a suspicion in the minds of the jurors that appellant had abused the complainant in the past. *See id*. We hold that the trial court erred by overruling appellant's rule 403 objections to Dunn's testimony.

Having found error in the admission of this evidence, we examine the record to determine if the error affected a substantial right. *See* Tex. R. App. P. 44.2(b). The complainant's credibility was the primary issue for the jury at the guilt-innocence stage. Her testimony regarding the scuffle outside the motel room and her cry for help was corroborated by the testimony of the motel maid. The jury also heard police testimony regarding the complainant's emotional state when they found her at the restaurant and, later, at the police station. The defense also offered testimony from restaurant employees who said they noticed nothing out of the ordinary when appellant and the complainant arrived. The complainant offered plausible explanations for why she waited until she reached the restaurant to call for help, and the dissimilarity between the "typical" spousal abuse case described by Dunn and the circumstances of this case suggests that the jury was unlikely to have given her testimony much weight in determining the complainant's credibility. We believe that the jury would have been no less likely to believe the complainant had Dunn not testified at all. At the punishment stage, the complainant testified that appellant threatened violence and suicide after she told him that she wanted a divorce, but she did not testify to any acts of physical abuse by appellant

11

before or since the events on February 12, 2004. The jury assessed punishments at the low end of the applicable range for first degree felonies. On this record, we are satisfied that the erroneous admission of Dunn's testimony did not affect appellant's substantial rights. *See id*. Point of error three is overruled.

The judgment of conviction is affirmed

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 10, 2008

Do Not Publish