TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00323-CR






Esteban Gonzalez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT


NO. CR-06-355, HONORABLE JACK H. ROBISON, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Esteban Gonzalez guilty of the aggravated kidnapping
and aggravated sexual assault of his estranged wife. See Tex. Penal Code Ann. §§ 20.04, 22.021
(West Supp. 2007). The jury assessed appellant's punishment for the kidnapping at ten years'
imprisonment, probated. The jury assessed a twenty-year prison term and a $10,000 fine for the
sexual assault.

In three points of error, appellant contends the trial court erred by permitting the State
to comment on appellant's post-arrest silence, by denying appellant the right to cross-examine
the complainant regarding a civil lawsuit she had filed based on the same incident, and by admitting
testimony regarding the pattern of domestic abuse. Finding no reversible error, we overrule the
points of error and affirm the conviction.

 


BACKGROUND


Appellant and the complainant were married in 1996 and had three children. After
the death of appellant's former wife, his four children from that marriage came to live with him and
the complainant. In December 2003, the complainant told appellant that she wanted a divorce. In
January 2004, the complainant and her three children moved out of appellant's house and began
living with her parents.

On the morning of February 12, 2004, appellant called the complainant to tell her that
he had received their income tax refund check. Appellant and the complainant had previously agreed
that they were going to use this money--approximately $5,300--to pay several of their debts. The
complainant agreed to meet appellant later that morning at a check-cashing service.

After they cashed the check, appellant and the complainant sat in appellant's car
(the complainant sat in the back seat) to discuss the bills. Appellant suddenly started the car and
drove away despite the complainant's demand that he stop and let her out. The complainant testified
that she had her cell phone with her, but she did not call for help because she did not anticipate what
would happen. Appellant drove to a nearby motel, where he told the complainant that there
was someone in a room who could prove that she had been unfaithful during their marriage. The
complainant agreed to go upstairs with appellant to meet this person, but she told him that she would
not go inside the room.

When they arrived at the second-floor room, appellant pushed open the door, seized
the complainant by the arm, and began to pull her inside. The complainant testified, "I knew I was
in trouble." She grabbed a railing and called out to a nearby motel maid for help. She lost her grip
on the railing and appellant succeeded in pulling her into the room. The complainant said that she
tried to call 911, but appellant seized the telephone before she could complete the call. Meanwhile,
the maid reported what she had seen and the desk clerk called the room. Appellant answered the
phone and told the clerk that he and his wife were having marital problems and that things were all
right. The motel staff accepted this answer and did not call the police.

Inside the room, the complainant noticed a number of rags that had been cut into
strips. (1) Appellant began to question the complainant about certain calls he had highlighted on their
cell phone bill. When the complainant attempted to leave the room, appellant seized her and threw
her onto the bed. The complainant testified that she screamed and tried to resist, but appellant was
too strong. Appellant tried to gag the complainant with one of the rags. The complainant began to
hyperventilate, and appellant allowed her to get up and go to the sink. In hopes of calming appellant,
the complainant decided to tell him "what he wanted to hear," which was that she would consider
a reconciliation. She also asked appellant to take her to a restaurant near the motel where they had
previously eaten. Appellant agreed to do this if the complainant would engage in sexual intercourse. 
She initially refused, but after further attempts to escape from the room were unsuccessful, she
agreed. She explained that she believed that she "wouldn't walk out of that room alive" otherwise. 
The complainant removed her pants and underwear, and appellant penetrated her anally.

After the assault, appellant and the complainant left the motel room to drive to the
restaurant. The complainant testified that she did not cry out to anyone as they left the room because
she had earlier been unable to get help at the motel. After appellant and the complainant were seated
at the restaurant, the complainant excused herself and went to the restroom. She locked herself in
a stall and called the attorney she had hired to handle the divorce. After hearing her story, he told
her to call 911. She did, and then waited in the stall and continued to talk to the 911 operator until
she was told that appellant was in custody and that police officers were waiting outside the restroom
door. Appellant was taken into custody as he stood outside the restaurant.


DISCUSSION


In point of error one, appellant contends that the trial court erred by permitting the
State to comment on his post-arrest silence and by refusing to instruct the jury to disregard the
comment. In Texas, a defendant's post-arrest silence cannot be used against him at trial. Sanchez
v. State, 707 S.W.2d 575, 578 (Tex. Crim. App. 1986); Hampton v. State, 121 S.W.3d 778, 782-83
(Tex. App.--Austin 2003, pet. ref'd).

While cross-examining one of the officers who responded to the complainant's 911
call from the restaurant, defense counsel took pains to establish that the police had arrested appellant
on the strength of the complainant's accusations and without first obtaining a statement from him. 
On redirect, the prosecutor confirmed with the officer that the trial was being held three years after
appellant's arrest. She then began to ask, "Has this defendant--." Defense counsel interrupted and,
at the bench, objected that the prosecutor was about to ask whether appellant had given a statement
during the three years following his arrest. The court did not expressly rule on the objection, but it 
instructed the jury not to "speculate about what the question was going to be." The prosecutor then
asked the officer, "When a person is taken to the police station, do they have the ability to give a
statement if they want to?" Again, defense counsel objected. The court admonished the prosecutor,
"[T]hat's not going to be allowed. You can't comment on whether or not he exercised his Fifth
Amendment right, period. There will be no discussion on that." Defense counsel asked the court
to instruct the jury to disregard "the same thing." The court responded, "I'm not going to instruct
the jury anything. I just told her she can't ask the question about whether or not he exercised
his Fifth Amendment rights." Counsel then asked the court to instruct the jury to disregard "the
implication that was made." The court did not rule on this request and the officer was excused
without further questions by the State.

The State argues that appellant opened the door to the prosecutor's questions through
his cross-examination of the officer. But appellant's questions to the officer concerned whether
appellant made a statement before he was arrested. The prosecutor's questions concerned whether
appellant made a statement after he was arrested. The right to remain silent arises when the
defendant is arrested. Sanchez, 707 S.W.2d at 580. Contrary to the State's argument, it was
not necessary for appellant to expressly invoke his right to silence. Because the right against self-incrimination arises when the defendant is arrested, any post-arrest silence is presumed to be an
exercise of that right. Id.

The trial court correctly prevented the prosecutor from expressly asking the officer
whether, during the three years between his arrest and his trial, appellant had given a statement to the
police denying the complainant's allegations. Although this was the implication of the prosecutor's
question as to whether a person "taken to the police station" has "the ability to give a statement if
they want to," the question was not answered and appellant did not obtain a ruling on his request for
an instruction to disregard "the implication that was made." See Tex. R. App. P. 33.1(a)(2)(A). We
also note that, just before the exchange quoted above, appellant failed to object when the prosecutor
asked the officer, "Did [appellant] ever offer to make a statement to the police?" The officer
answered, "Not to me." To preserve error, a party must object each time the inadmissible evidence
is offered. Lane v. State, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). Because substantially
identical testimony was offered without objection, no error is presented. Point of error one
is overruled.

In his second point of error, appellant urges that the trial court erred by refusing to
allow him to cross-examine the complainant regarding a civil suit she filed against the motel where
the assault occurred. We review the court's decision to exclude evidence for an abuse of discretion. 
See Oprean v. State, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006).

The record reflects that the complainant filed a lawsuit for damages against the
operators of the motel. The suit was settled two years before appellant's trial, and appellant's
attempt to obtain discovery regarding the details of the settlement was the subject of a pretrial
hearing. Before trial, the State filed a motion in limine to prevent appellant from offering evidence
regarding the suit. In accord with the State's motion, appellant asked the court for permission during
the trial to cross-examine the complainant regarding the lawsuit. The court refused this request,
ruling that "any motive she might have had to enhance her financial settlement with a lawsuit with
[the motel] would have expired two years ago, when she settled it."

A defendant is entitled to pursue all avenues of cross-examination reasonably
calculated to expose a motive, bias, or interest for the witness to testify. Carroll v. State,
916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Evidence that the complainant has brought a civil
suit against the defendant growing out of the same incident is admissible as tending to show
bias and interest. See Cox v. State, 523 S.W.2d 695, 700 (Tex. Crim. App. 1975). Under certain
circumstances, evidence of the complainant's civil suit against a third party may also be relevant to
show bias. Compare Hoyos v. State, 982 S.W.2d 419, 421-22 (Tex. Crim. App. 1998) (holding there
was no error in excluding evidence of complainant's civil suit), with Shelby v. State, 819 S.W.2d
544, 545 (Tex. Crim. App. 1991) (holding trial court erred by refusing to allow cross-examination
regarding civil suit); Furgison v. State, 800 S.W.2d 587, 589-91 (Tex. App.--Houston [14th Dist.]
1990, pet. ref'd) (same).

A closer question would be presented if the complainant's civil suit against the motel
had been pending at the time of appellant's trial. We agree with the trial court, however, that the
complainant's settlement of the suit two years before trial removed any apparent financial incentive
she might have had for testifying against appellant. We also note that the trial court permitted
appellant to offer evidence that the complainant obtained financial remuneration for appellant's acts
in the divorce case. No abuse of discretion is shown, and point of error two is overruled.

Finally, appellant contends that the trial court should not have admitted testimony
about what the prosecutor referred to as the "dynamics" or "cycles" of domestic abuse. He urges that
whatever relevance the testimony might have had was outweighed by the danger of unfair prejudice. 
See Tex. R. Evid. 403. Once again, we review the trial court's ruling for an abuse of discretion. See
Oprean, 201 S.W.3d at 726.

The witness was Officer Penny Dunn, an eighteen-year veteran of the San Marcos
Police Department. Dunn began her testimony by describing her special training "related to
domestic violence investigation, . . . sexual assault investigations, . . . those types of things." She
said that she was part of the department's "domestic violence investigation team . . . that relates to
specialized training, evidence collection, dealing with victims after domestic violence." Dunn then
stated that she had trained "in excess of 500 individuals" including "[o]fficers, dispatchers and
civilian staff" with respect to domestic violence investigations.

Before Dunn could testify further, appellant challenged her expertise--an issue he
does not pursue on appeal. Appellant also objected to any testimony regarding "battered women's
syndrome" on the ground that it would be more prejudicial than probative, citing rule 403. Appellant
argued that such testimony would cause the jury to "assume that he's just beat the hell out of her
on a regular basis." The trial court overruled the rule 403 objection, holding that Dunn would
be permitted to testify for "the limited purpose" of showing that "it's not unusual for battered women
to not leave the home, remain in the home and stay with the person that's been the source of
their antagonism."

Continuing her testimony, Dunn said that instances of domestic violence that result
in police calls are usually preceded by several unreported instances of abuse; the average is eight
unreported incidents. She said that typically there is a "long manipulative process" during which
abuse victims are made "more vulnerable and less likely to outcry." Dunn indicated that it was not
unusual for domestic abuse victims to remain with their abusive partner and to keep the abuse a
secret, even from close family members. She opined that domestic abuse victims fail to report the
abuse due to fear, shame, and embarrassment.

Then, over appellant's objection that it was irrelevant, Dunn was allowed to describe
a recent, unrelated investigation in which she was involved. In that case, the abused wife had been
battered and sexually assaulted by her husband for years, but she never sought help. The wife called
the police, said Dunn, only after the husband "strangled her and she lost consciousness."

Dunn next described her involvement in the investigation of this case. Over
appellant's objection that she was invading the province of the jury, Dunn expressed the opinion that
the complainant had been the victim of domestic violence.

Finally, after another rule 403 objection was overruled, Dunn testified that domestic
abuse involves a "cycle of violence." First, there is the "tension-building stage" in which the victim
seeks to avoid a violent incident. Next, there is the violence itself, "which may be brief or go for a
long period of time." Last, there is the "respite or honeymoon phase" during which the abuser will
be apologetic and suggest to the victim that the violence was the victim's fault. Dunn testified that
for this cycle to end, there must be "some type of intervention or some consequences suffered by the
batterer to make them stop."

The State argues that Dunn's testimony was relevant to rebut appellant's defense,
which was that the complainant had voluntarily gone to the motel room, had consented to the sex
act, and had falsely accused appellant in order to help her divorce case. This, suggested the defense,
explained why the complainant did not cry out for help as she left the room following the alleged
assault and why persons standing outside the room heard no unusual noises while the assault was
allegedly taking place. The State primarily relies on the opinion in Scugoza v. State, a prosecution
of a husband for the assault of his wife, in which the complaining witness, in her trial testimony,
disavowed much of what she had told the police on the night of the assault. 949 S.W.2d 360, 362-63
(Tex. App.--San Antonio 1997, no pet.). The court of appeals concluded that expert testimony
describing the cycle of abuse in family violence situations was properly admitted to explain the
inconsistencies between the complainant's testimony and her previous statements to the police. Id.
at 363. Appellant acknowledges the holding in Scugoza, but urges that it is not applicable here
because the complainant made her outcry almost immediately and never changed her story. 
Appellant argues that Dunn's testimony was not relevant to any issue in the case, and that it served
only to suggest to the jury that he was a long-term abuser of his wife.

Appellant did not object on rule 403 grounds to Dunn's testimony describing her
other recent investigation or to her opinion that the complainant was the victim of domestic violence. 
Therefore, we do not reach the question whether that testimony was more prejudicial than relevant. 
We agree with appellant that Dunn's description of the patterns and dynamics of spousal abuse, to
which he did make rule 403 objections, had little relevance to this case. The complainant did not
display the behavior of the "typical" abused spouse as described by Dunn or of the abused spouse
in Scugoza. She did not delay making her outcry against appellant by even a few days, and her
testimony was consistent with her initial outcry. Dunn's opinion as to why an abused spouse might
allow the abuse to continue for months before making an outcry did not speak to the complainant's
failure to call 911 on her cell phone while appellant drove from the check cashing service to the
motel or to her failure to cry out to bystanders when leaving the motel to go to the restaurant, nor did
it rebut appellant's defensive theory that the complainant's accusations were false. In short, Dunn's
testimony did not serve to make more probable any fact of consequence to the State at this trial. See
Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g). At the same
time, appellant was correct to argue that Dunn's testimony had the potential to impress the jury in
an irrational but nevertheless indelible way by raising a suspicion in the minds of the jurors
that appellant had abused the complainant in the past. See id. We hold that the trial court erred by
overruling appellant's rule 403 objections to Dunn's testimony.

Having found error in the admission of this evidence, we examine the record to
determine if the error affected a substantial right. See Tex. R. App. P. 44.2(b). The complainant's
credibility was the primary issue for the jury at the guilt-innocence stage. Her testimony regarding
the scuffle outside the motel room and her cry for help was corroborated by the testimony of the
motel maid. The jury also heard police testimony regarding the complainant's emotional state when
they found her at the restaurant and, later, at the police station. The defense also offered testimony
from restaurant employees who said they noticed nothing out of the ordinary when appellant and the
complainant arrived. The complainant offered plausible explanations for why she waited until she
reached the restaurant to call for help, and the dissimilarity between the "typical" spousal abuse case
described by Dunn and the circumstances of this case suggests that the jury was unlikely to have
given her testimony much weight in determining the complainant's credibility. We believe that the
jury would have been no less likely to believe the complainant had Dunn not testified at all. At the
punishment stage, the complainant testified that appellant threatened violence and suicide after she
told him that she wanted a divorce, but she did not testify to any acts of physical abuse by appellant
before or since the events on February 12, 2004. The jury assessed punishments at the low end of
the applicable range for first degree felonies. On this record, we are satisfied that the erroneous
admission of Dunn's testimony did not affect appellant's substantial rights. See id. Point of error
three is overruled.

The judgment of conviction is affirmed



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 10, 2008

Do Not Publish
1. The police would later find in the room a video camera, ligatures tied to the bed, a vibrator,
and women's underwear.